FLORENTINO CARRERA BLANCO, demandante y apelado, *v.* GABRIEL PALERM ENRICH, demandado y apelante.

Núm. 7282.—*Sometido:* Noviembre 26, 1937. *Resuelto:* Marzo 11, 1938.

816

R. *Padró Parés,* abogado del apelante; *F. Fernández Cuyar* y *H. González Blanes,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF emitió· la opinión del tribunal.

En este caso está envuelto el derecho de un acreedor hipotecario a obtener una sentencia contra su deudor original por el remanente insoluto de su crédito, cuando la propiedad en sí ha pasado a manos de un tercero, aunque el adquirente del deudor original haya asumido el pago de la deuda. De los casos de *Luyando* v. *Díaz,* 46 D.P.R. 691, *Fernández* v. *Luyando,* 46 D.P.R. 687, y *Puig* v. *Sotomayor,* 47 D.P.R. 454, se desprende claramente que un acreedor hipotecario puede proceder directamente contra su deudor original, el cesionario de éste, o contra el comprador de la propiedad principal, cuando este último ha asumido el pago de la hipoteca, y aun contra el deudor y su cesionario conjuntamente. Desde luego, si el acreedor opta por proceder contra el deudor original y resulta que su cesionario se ha comprometido a pagar la deuda original, entonces surgiría en favor del deudor original una causa de acción contra su cesionario. Este derecho del deudor no le ofrece defensa alguna

en cuanto a su acreedor hipotecario original. Esto es más notablemente cierto cuando la venta de las propiedades hipotecadas tuvo lugar sin notificarse al acreedor o sin su consentimiento.

██ La regla general es que la deuda obliga personalmente al deudor original y que éste es responsable del pago de cualquier déficit que resulte en caso de que al venderse la propiedad la misma dejase de cubrir el importe del contrato o de la deuda original. Según su definición, la hipoteca es un contrato accesorio; se constituye para garantizar el cumplimiento de una obligación principal. Este caso también envuelve otras cuestiones, entre ellas el derecho del acreedor hipotecario a obtener contra su deudor original una sentencia sobre las alegaciones.

Los hechos, tomados más o menos del alegato del apelado y siguiendo las alegaciones de la demanda, demuestran que en 5 de noviembre de 1929 Gabriel Palerm recibió en calidad de préstamo la suma de $20,000 de manos de Florentino Carrera. Suscribió cuatro pagarés por la suma de $5,000 cada uno a la orden de Carrera, que serían pagados con intereses cuatro años más tarde. En garantía de estas obligaciones Palerm otorgó hipoteca sobre dos de sus propiedades, una, a la cual nos referiremos de aquí en adelante con la letra A, para responder de la cantidad de $15,000, y la otra, o sea la que describiremos con la letra B, para responder de $5,000. Como garantía adicional el deudor también entregó a Carrera dos pagarés hipotecarios al portador, uno por $10,000 y otro por $15,000. Las partes convinieron en que cuando Palerm pagase una de las cuatro obligaciones de $5,000, Carrera le devolvería el pagaré hipotecario de $10,000 que había sido entregado por Palerm como garantía adicional, y que al efectuarse el pago de otros $5,000, Carrera le devolvería a Palerm el otro pagaré hipotecario de $15,000. La idea era que la única responsabilidad de Palerm fuera entonces los $10,000 que restaban de la deuda hipotecaria.

Posteriormente Palerm y su esposa vendieron a Pedro Batista las dos propiedades hipotecadas. A su vez los esposos Batista segregaron una porción de la parcela cuya responsabilidad había sido fijada en $15,000, a fin de que dicha porción segregada formase una finca aparte, y la parcela así segregada fué vendida a Demetrio Latoni por la suma de $10,000, que fué pagada por Latoni a Carrera, el demandante en este caso, para ser abonada al préstamo de $20,000. En 2 de marzo de 1932 el demandante, Carrera, otorgó una cancelación parcial de la hipoteca. Esta cancelación parcial fué otorgada en tal forma que la parcela segregada quedó exonerada de todo gravamen. Fué la parte no segregada de la finca A la que asumió la responsabilidad del pago de los $5,000 que todavía aseguraba.

En consideración a la aceptación por el demandante Carrera del pago de estas dos obligaciones y de la exoneración de la parcela segregada, y de otras consideraciones, Palerm convino con Carrera, en 2 de marzo de 1932, en modificar el contrato de garantía colateral existente entre ellos, de manera que Palerm recibiese solamente la devolución del pagaré hipotecario por $10,000 y que Carrera retuviese como garantía colateral y además de los dos pagarés de $5,000, el pagaré hipotecario de $15,000 ya mencionado. *El pagaré hipotecario de $10,000* fué devuelto y los pagarés originales números 1 y 2, por $5,000 cada uno, fueron cancelados, y Carrera retuvo en su poder los números 3 y 4, conjuntamente con el pagaré hipotecario de $15,000.

En 18 de agosto de 1932, los esposos Batista vendieron a los esposos Cruet Carrasquillo lo que restaba de las dos propiedades hipotecadas que ellos habían adquirido de Palerm. Cuando los pagarés 3 y 4 vencieron y no fueron pagados, Carrera inició un procedimiento ejecutivo sumario contra las dos propiedades que habían sido vendidas a los Cruet. La reclamación era por $12,896.39. Cada una de las dos fincas fué adjudicada al acreedor por la suma de $2,500, quedando

por ende en descubierto $6,500 de principal más los intereses, que ascendían a la suma de $1,396.39.

Por tanto, en el presente pleito se reclamaba un déficit de $7,896.39, y por él fué que se dictó la sentencia sobre las alegaciones. Los señalamientos primero y cuarto leen como sigue:

"La corte cometió error en su resolución de 8 de marzo de 1935 al denegar la moción del demandado para que se hiciera más clara y específica la demanda.

"La corte cometió error al dictar sentencia final en este caso cuando la demanda no contiene una causa de acción contra el demandado."

Convenimos con el apelado en que para poder hacer responsable al deudor, el acreedor hipotecario no tenía necesidad de alegar en su demanda solicitando sentencia por el referido déficit, las relaciones existentes entre los varios compradores de las propiedades. Asumiendo la validez del procedimiento ejecutivo, bastaba que el acreedor hipotecario demostrase el déficit existente en el pago de su crédito hipotecario. En cuanto al cuarto señalamiento de error, estamos plenamente convencidos de que la demanda, tal cual ha sido resumida más arriba por nosotros, aducía suficientemente una causa de acción, especialmente si aceptamos, como debemos, la jurisprudencia a que ya nos hemos referido.

El segundo señalamiento de error es como sigue:

"La corte sentenciadora cometió error al dictar sentencia sobre las alegaciones de la demanda, bajo el erróneo supuesto de que la contestación no contenía una negación específica de las mismas."

A este respecto el apelado dice lo siguiente:

"La demanda contiene diez párrafos y está debidamente jurada. La contestación radicada en 5 de octubre de 1935 niega los hechos en la siguiente forma: Acepta los primeros cuatro hechos, así como el sexto, y 'niega enfáticamente' los hechos 5, 9 y 10 de la demanda. Los hechos 7 y 8 los niega 'por falta de información y creencia'. En su juramento a la contestación el demandado declara que ha leído

dicha contestación 'y los hechos, tal como se consignan, son la verdad que me consta de propio conocimiento, excepto aquellos hechos que acepto o niego por información y creencia.'

"En primer lugar, debe observarse que el juramento hecho en la forma dicha es nulo e ineficaz en ley, de acuerdo con lo resuelto por esta Honorable Corte en los casos de *Pérez* v. *El Consejo Ejecutivo*. 16 D.P.R. 712, y *Nazario* v. *Atlas*, 24 D.P.R. 358, ya que dicho demandado no expresa cuáles hechos conoce de propio conocimiento y cuáles por información y creencia, ni si cree cierta tal información y creencia. En tales condiciones, este mero hecho sería suficiente para justificar una sentencia sobre las alegaciones, ya que estando jurada la demanda no lo está en derecho la contestación.

"En segundo lugar, la negación que se pretende hacer de algunos hechos de la demanda es sumamente insuficiente en vista de lo exigido por el Código de Enjuiciamiento Civil (artículo 110), y de la jurisprudencia constante sobre el particular."

El apelado cita casos para sostener su derecho a una sentencia sobre las alegaciones, la que creemos estuvo suficientemente justificada. Debemos dar énfasis al hecho de haberse dejado de negar específicamente, más bien que a las deficiencias del juramento.

El tercer y último señalamiento de error lee así:

"La corte sentenciadora cometió error en su resolución de 24 de febrero de 1936 al denegar la solicitud del demandado para que se anulara la sentencia de 31 de diciembre y se abriera de nuevo el caso."

Indudablemente, cuando se radica una moción bajo el artículo 140 del Código de Enjuiciamiento Civil, la corte tiene una discreción amplia, pero también tiene discreción para denegarla. El apelado llama nuestra atención hacia el hecho de que la moción no contenía *affidavit* de méritos alguno y a que el demandado actuó tardíamente al presentar su moción para dejar sin efecto la sentencia y reinstalar el caso.

El apelante, sin embargo, también radicó, conjuntamente con su moción, una contestación enmendada. Somos de opinión que esta contestación enmendada no subsanó suficientemente los defectos de la contestación original, por cuanto

ciertos párrafos de la misma contenían negativas que envolvían afirmaciones (*negative pregnants*), ya que negaba algunas de las alegaciones de la demanda en *ipsissimis verbis* (en sus propias palabras). La contestación, como apunta el apelado al discutir tanto la original como la enmendada, omitía otras negaciones. La contestación enmendada también contenía materia nueva. El apelado la discute y a nuestro juicio rechaza con éxito las contenciones del apelante.

Independientemente de esto, la posición del apelante no fué justificada por un *affidavit* de méritos y la corte no cometió abuso de discreción al negarse a considerar la materia nueva después de todas las oportunidades que tuvo el apelante mientras el caso se hallaba pendiente de que se resolviera la moción de sentencia sobre las alegaciones.

*La sentencia y resolución apeladas deben ser confirmadas.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.