PEDRO BATISTA ANDINO, como cesionario de GABRIEL PALERM ENRICH, demandante y apelante, *v.* FLORENTINO CARRERA BLANCO, demandado y apelado.

Núm. 7632.—*Sometido:* Diciembre 13, 1937. *Resuelto:* Abril 8, 1938.

A. *Rivas,* abogado del apelante; *F. Fernández Cuyar* y *H. González Blanes,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

Los hechos de este caso están íntimamente relacionados con los de *Carrera* v. *Palerm,* 52 D.P.R. 815. Por tanto, para una relación más detallada de la transacción hipotecaria original, podría referirse a la decisión mencionada.

En noviembre 5 de 1929, Gabriel Palerm Enrich y su esposa otorgaron una escritura de hipoteca sobre dos fincas, que en

adelante se describirán como "A" y "B", a favor de Florentino Carrera Blanco, para garantizar un préstamo de $20,000. Los deudores hipotecarios también suscribieron cuatro pagarés de $5,000 cada uno a la orden del acreedor. El mismo día Palerm y Carrera celebraron un contrato privado a virtud del cual dos pagarés hipotecarios al portador por diez mil y quince mil dólares, respectivamente, fueron pignorados al acreedor como garantía adicional del pago del préstamo original de $20,000. Una de las cláusulas a que este contrato privado o colateral estaba sujeto era la de que al pagarse los primeros $5,000 del préstamo original, el pagaré al portador por $10,000 sería devuelto al deudor, y al pagarse otros $5,000 el otro pagaré al portador por $15,000 sería igualmente devuelto.

En septiembre 10 de 1930 Gabriel Palerm y su esposa vendieron a Pedro Batista Andino las fincas hipotecadas "A" y "B", así como otra propiedad, "C", que garantizaba el pagaré al portador por $15,000, pignorado. Además de estos inmuebles, según se alega, los vendedores transfirieron el título de los pagarés pignorados, así como todos los derechos a obtener su devolución. Se desprende que el precio de la compraventa fué $37,000; que Batista sólo pagó $2,000 en efectivo y retuvo $35,000 para pagar la hipoteca de $20,000 sobre las fincas "A" y "B" y la hipoteca de $15,000 sobre la finca "C". No se desprende que él asumiera personalmente el pago de estas deudas ni que Carrera lo aceptara jamás en sustitución como deudor, ni aun siquiera que Carrera tuviera conocimiento de otra cosa que no fuera que las fincas ya referidas habían sido vendidas a Batista. Posteriormente a Carrera se le pagó la suma de $10,000 a cuenta de su crédito hipotecario. Como resultado de este pago parcial, él devolvió dos de los pagarés de $5,000 y el pagaré hipotecario de $10,000 que se había pignorado. En lo que se refiere al otro pagaré de $15,000, Gabriel Palerm, que era la única persona que en todo momento había tratado con Carrera, convino con éste en que

Carrera retuviera su posesión por una causa (*consideration*) que aparece en los autos y que incluía, entre otras cosas, la liberación del gravamen hipotecario original, de una parcela segregada por Batista y vendida a Latoni. Este convenio, que modificaba el pacto original colateral de noviembre 5 de 1929, fué suscrito por Palerm y por el representante de Carrera. Parece que la esposa de Palerm murió con anterioridad a esta transacción.

El presente recurso fué iniciado por Batista para recobrar la posesión del pagaré al portador de $15,000, dado como garantía colateral, fundado en que él había obtenido todo título al mismo al comprar las fincas "A", "B" y "C". Sostiene que el convenio modificado celebrado por Palerm y Carrera en 1932 era nulo, toda vez que (*a*) Palerm había transferido todos sus derechos bajo el contrato a Batista y (*b*) porque aun asumiendo que la cesión hecha por Palerm no obligaba a Carrera, Palerm no tenía autoridad alguna, ya que su esposa había muerto, para modificar por sí mismo el convenio.

Es claro que la cesión hecha por Palerm a Batista nunca fué notificada a Carrera. Batista sostiene, sin embargo, que no era necesario hacer tal notificación, de conformidad con los artículos 1172, 1181 y 1416 del Código Civil (ed. 1930) y que, en su consecuencia, él tenía derecho a que se le devolviera el pagaré de $15,000, toda vez que se había dado cumplimiento a los términos del contrato original. La corte inferior dictó sentencia contra el demandante y le condenó al pago de costas, incluyendo honorarios de abogado.

La relación de hechos que antecede ha sido obtenida de las distintas mociones que están ante nos y de los alegatos radicados por las partes ante la corte inferior, que admitimos para fines informativos.

Actualmente están ante nos pendientes de consideración dos mociones. Una de ellas es una moción para reconsiderar nuestra resolución de noviembre 30 de 1937, negándonos a

conceder un nuevo término para radicar la transcripción de evidencia. La otra es una moción para desestimar el recurso por falta de una transcripción de autos en apelación.

Toda vez que el declarar sin lugar la moción de reconsideración conllevaría necesariamente la desestimación del recurso por falta de la transcripción de autos, dirigiremos primeramente nuestra atención hacia la moción del apelante.

■ Todavía estamos convencidos de que el apelante no ha sido diligente en la prosecución de este recurso. La sentencia fué dictada por la corte sentenciadora el 30 de abril de 1937 y notificada el 5 de mayo del mismo año. El recurso de apelación fué entablado el 1º. de junio de 1937, y ante esta corte no se radicó nada hasta el 2 de noviembre de 1937, o sea más de cinco meses después de haberse radicado el escrito de apelación, y entonces lo que se presentó fué una moción de nuevo término. Aún para esta fecha tan tardía no está el legajo de la sentencia ante este tribunal, ni radicado en Secretaría. En diciembre 10 de 1937, cuando el apelante radicó su moción de reconsideración, él unió a ella copia de la opinión emitida por la corte inferior y de la transcripción de la evidencia certificada por el taquígrafo de dicha corte.

Bajo estas circunstancias, el apelante se halla en la posición de haber dejado de elevar a este tribunal los autos dentro de treinta días a partir de la radicación del recurso, y, a menos que reconsideremos nuestra resolución de noviembre 30 de 1937, el caso cae bajo la doctrina de *Sánchez Osorio* v. *Vizcarrondo,* 40 D.P.R. 261, y otros. No estamos en absoluto inclinados a reconsiderar la resolución mencionada, por ninguno de los motivos alegados, o sea, porque ha habido una justificación, o porque ello equivaldría a una injusticia.

■ La única cuestión que queda por determinar es si debemos ejercer nuestra discreción para conceder al apelante un nuevo término si nos convence de que tiene un recurso de apelación meritorio. Para demostrar sus méritos prima facie,

el apelante ha señalado seis de las conclusiones a que llegó la corte inferior. Considerémoslas.

A.—La cuestión que se discute bajo esta letra es quizá la más importante. Según Batista, la corte inferior resolvió que la cesión héchale de los derechos de Palerm bajo el "contrato original colateral" celebrado por Palerm y Carrera, resultaba ineficaz debido a haberse dejado de notificar a Carrera de dicha cesión. Batista también afirma que la corte consideró dicho convenio como documento negociable. Hemos leído la opinión de la corte inferior y hallamos que dicha corte se refiere a los derechos o "equidades" en el *pagaré hipotecario* mismo y no necesariamente a los derechos sobre el contrato colateral. Irrespectivamente del razonamiento del juez, el criterio que hemos formado de esta cesión y de toda la transacción desde el principio nos induce fuertemente a favorecer la posición de Carrera. Podría ser que Batista adquiriera todos los derechos de Palerm, en tanto en cuanto al mismo Palerm se refería. Empero, el dejar Batista de notificar a Carrera al hacerse esta transmisión de derechos o aun al tiempo en que Carrera posteriormente liberó de la hipoteca original la porción segregada vendida, como lo fué, a Latoni por Batista en consideración, en parte, de la retención del pagaré al portador de $15,000 como garantía colateral, hace que la posición de este último resulte contraria a la equidad. Tal notificación quizá hubiera muy propiamente afectado la actitud de Carrera hacia la liberación de la parcela, especialmente si Batista hubiera insistido en que se cumpliera el contrato original. Batista sabía que Carrera había siempre tratado con Palerm. También sabía que él, Batista, no había hecho nada que indujera a Carrera a creer que Palerm ya no tenía derecho a obtener los beneficios provenientes del contrato colateral. Bajo estas circunstancias, él debe sufrir las consecuencias de cualesquiera transacciones habidas posteriormente entre Palerm y Carrera, especialmente, repetimos, cuando como resultado de esas transacciones posteriores Ba-

tista estuvo personalmente en posición de vender parte de la finca originalmente hipotecada, libre del gravamen. Tal venta, debemos presumir, redundó en beneficio de Batista. Existen otras consideraciones en lo relativo al efecto que debe dársele a la supuesta cesión, que meramente fortalecen el convencimiento que tenemos de que la sentencia de la corte inferior estuvo justificada.

B.—No existe duda alguna sobre lo correcto de la sentencia de la corte inferior al efecto de que Batista nunca fué aceptado como deudor sustituto en lugar de Palerm.

C.—Esta cuestión no tiene importancia alguna para los fines de la apelación.

D y E.—No estamos enteramente convencidos de que Palerm tenía autoridad absoluta para modificar el contrato original, pero tal defensa debe más propiamente ser levantada por los herederos de la esposa de Palerm. Ciertamente Palerm, que era un deudor mancomunado y solidario del pagaré de $15,000, tenía autoridad para afectar cualquier interés que pudiera haber tenido en los bienes hipotecados para garantizar dicho pagaré. Además, él era personalmente responsable de dicho pagaré, y esa responsabilidad quizá valía algo.

F.—Esta resolución de la corte inferior, a nuestro juicio, no podía afectar los verdaderos méritos del caso.

Por las razones arriba expuestas y en vista de que no estamos convencidos de que las contenciones suscitadas en apelación por el demandante son meritorias, opinamos que la moción para reconsiderar, de fecha 10 de diciembre de 1937, debe ser declarada sin lugar y en su consecuencia que la apelación debe ser desestimada por haberse dejado de radicar la transcripción de autos ante este tribunal dentro del período fijado por la ley.

*Se desestima el recurso.*

El Juez Asociado señor Travieso no intervino.