GLORIA P. DE GONZÁLEZ y EDUARDO G. GONZÁLEZ, peticionarios, *v.* TRIBUNAL DE CONTRIBUCIONES DE P. R., demandado; TESORERO DE PUERTO RICO, interventor.

Núm. 264.—*Sometido:* Noviembre 8, 1951. *Resuelto:* Enero 16, 1952.

*Brown, Newsom & Córdova*, abogados de los peticionarios; *Hon. Procurador General Víctor Gutiérrez Franqui* y *José A. García Malpica, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Veintiún años ha existió en San Juan la corporación Bruno & González. Se dedicaba a la exhibición de películas cinematográficas de las productoras Paramount, Metro y Columbia en los teatros Rialto, Capitol y Tres Banderas poseídos por ella en arrendamiento. Sus accionistas exclusivos lo eran Julio R. Bruno y Eduardo G. González. Para aquel entonces Rafael Ramos Cobián se dedicaba asimismo a idéntico negocio y exhibía películas de la Fox, R.K.O., Universal y Artistas Unidos en los teatros Olimpo, Fox, Liberty y Victoria que también poseía en arrendamiento. Debido a la competencia que mutuamente se hacían, los negocios de ambos se hallaban en condiciones precarias. Para evitar el desastre económico, aquélla y éste acordaron unirse y constituyeron la corporación United Theatres, Inc., a la cual aportaron todo su activo y pasivo, los contratos de arrendamiento que poseían y sus respectivos derechos a exhibir las cintas cinematográficas de las productoras ya mencionadas. Organizada la nueva entidad corporativa, se entregaron tanto a Bruno como a González 250 acciones[1] y a Ramos Cobián 500 acciones de la United Theatres, Inc., con un valor a la par cada una de $100.

[1] A la corporación Bruno & González en sí nada se entregó.

Transcurrió el tiempo y ocho años más tarde González y su esposa vendieron las 250 acciones de la United Theatres Inc. por ellos poseídas a Ramos Cobián en $25,000. Para dicho año (1939) los esposos González radicaron planillas separadas y no informaron ingreso alguno por razón de tal venta. Posteriormente y dentro del término fijado por ley para hacerlo, el Tesorero de Puerto Rico les hizo sendas notificaciones de deficiencia, provenientes de la venta de las referidas acciones. Nada habían costado, a juicio del Tesorero, dichas acciones a los esposos González, y según él, al venderlas en $25,000 cada uno de ellos obtuvo un beneficio néto de $12,500. Solicitada por los contribuyentes la reconsideración y vista administrativa de rigor y ratificado el Tesorero en su criterio, acudieron aquéllos al Tribunal de Contribuciones, donde luego de ofrecerse prueba testifical y documental se resolvió que: el valor, ya fuere a la par, en los libros, o cualquier otro valor que tuvieren las acciones de United Theatres al adquirir los negocios de Bruno & González en 1931, no representa ni puede representar el *costo* de esas acciones para los contribuyentes; las acciones costaron a éstos la mitad de lo que la firma Bruno & González entregó a United Theatres a cambio de las mismas, y si de acuerdo con la posición asumida por el querellado, por las acciones de United Theatres, Bruno & González dió a cambio un pasivo que sobrepasaba el activo en $12,241.20, obviamente las acciones no costaron nada a los querellantes, por lo que al venderlas luego en $25,000 realizaron una ganancia neta en esa cantidad, y de ser ello así habría que sostener al querellado en su posición.

Continuó manifestando el Tribunal recurrido que la prueba, sin embargo, le había convencido de que en adición al activo de $33,464.10, consistente en mobiliario y equipo, Bruno & González traspasó a United Theatres ciertos derechos de arrendamiento, a saber: de los teatros Capitol, Tres Banderas y Rialto, con períodos por expirar de 8, 7 y 5 años, respectivamente; que no tenía dudas de que dichos arrendamientos, siendo un factor esencialísimo en la explotación y

negocio de cines constituían un haber de Bruno & González que formaba parte del activo traspasado; y que si el valor de dichos arrendamientos unido al monto del activo no sobrepasaba el pasivo no habría que intervenir con la determinación del querellado, pero que si por el contrario lo excedía, entonces el *costo* de las acciones para Bruno & González debía ser una cantidad igual a la diferencia, y para cada uno de los querellantes la mitad de la misma.

Indicó además el Tribunal recurrido que los querellantes, a través de su testigo pericial Adolfo López Capó, tomaron el activo de United Theatres y le adicionaron la cantidad de $75,000, valor que le dieron a todos los arrendamientos de esa entidad, entre los cuales estaban incluídos los que le cediera Bruno & González sobre los teatros Rialto, Capitol y Tres Banderas; que el valor de $75,000 considerado por el perito para dar valor a las acciones, lo fué sobre arrendamientos en poder de United Theatres, como parte de su propio activo, explotando esa entidad el negocio en mayor escala y siendo más poderosa que la firma Bruno & González cuando ésta cedió sus arrendamientos en medio de una situación de competencia; y que habiendo el tribunal rechazado el sistema seguido por los querellantes para fijarle un costo a sus acciones por ser incorrecto, se encontraba ante la situación de no disponer de base en los autos para fijar un valor en dinero a los arrendamientos, no teniendo siquiera prueba del canon de los mismos que le permitiera determinar el valor de los arrendamientos por el término a expirar.

En opinión del Tribunal recurrido el problema se reducía a fijar un valor en dinero a esos derechos intangibles de arrendamiento. Manifestó que "sería a nuestro juicio injusto para el demandante[2] el que desestimáramos totalmente su demanda constándonos, como nos consta, que como parte del activo que él cedió a United Theatres existían estos arrendamientos con un valor adicional, por el hecho de que

---

[2] Los peticionarios radicaron querellas separadas ante el Tribunal recurrido. De ahí que éste se refiera al "demandante".

no podamos en estos momentos reducir dicho valor a dólares y centavos." Después de exponer lo anterior, resolvió el caso como si se tratara de uno sobre sentencia declaratoria y decretó:

"(a) Que el costo de las acciones del demandante a los efectos de determinar la ganancia que obtuvo en la venta realizada en el año 1939 de las 250 acciones que recibiera de la United Theatres en 1931, es la mitad de la diferencia, si la hubiera del exceso del activo sobre el pasivo traspasado por la firma Bruno & González en 1931 a United Theatres; y

"(b) Que como parte del activo de Bruno & González traspasado, procede que se incluya el valor que para esa época tenían los arrendamientos de los cines Capitol, Tres Banderas y Rialto, por el término que aún restaba por expirar en cada uno de dichos arrendamientos."

Concedió, además, a los querellantes un término de veinte días para que sometieran un escrito con notificación al querellado, fijando el costo de sus acciones a tono con lo anteriormente resuelto.

Dentro del término concedídoles los querellantes radicaron un escrito en el cual hicieron constar que el valor de los arrendamientos de los teatros Capitol, Tres Banderas y Rialto en poder de Bruno & González era $40,000, cantidad que unida al activo de $33,464.10, correspondiente a mobiliario y equipo y luego de deducirse las deudas y obligaciones de esa corporación ascendentes a $45,705.30, dejaba un remanente de $27,758.80, como exceso del activo sobre el pasivo de la extinta corporación. De esa cantidad, según el escrito radicado, $13,879.40 correspondían a los querellantes.

Se opuso el querellado y el Tribunal señaló una vista para oír a las partes. En la finalmente celebrada en 14 de noviembre de 1950, las partes estipularon, según se desprende del acta de dicha vista suscrita por el subsecretario que consta en autos,(³) que de declarar los señores Rafael Ramos Co-

---

(³) De esa estipulación no hay otra constancia en los autos, fuera desde luego, de la referencia que a ella se hace en la resolución del Tribunal recurrido de fecha 29 de noviembre de 1950.

bián y Eduardo G. González dirían que el valor de los arrendamientos de los teatros Capitol y Rialto (sic) quedaría desglosado en la siguiente forma: $35,000 correspondientes a Ramos Cobián y $40,000 a Bruno & González, dejando así el caso sometido para resolución con la prueba presentada por las partes en las vistas anteriores con relación al valor de las acciones. El Tribunal recurrido dictó entonces resolución en la que hizo constar que habiéndose limitado los querellantes a estipular lo que declararían los indicados testigos entendía que ellos "no han probado en forma satisfactoria que nos permita anular las actuaciones del demandado, el valor de esos arrendamientos, y por ende, el costo de sus acciones," y que "no hay prueba siquiera del canon fijado de dichos contratos de arrendamiento, como uno de tantos factores para determinar el valor de los arrendamientos aún por expirar."

Para revisar esa resolución expedimos el auto de *certiorari* especial autorizado por el artículo 6 de la Ley núm. 328 de 13 de mayo de 1949, págs. 997, 1005.

Insisten en primer lugar los peticionarios Gloria P. de González y Eduardo G. González en que la base correcta para determinar sus beneficios cuando en el año 1939 vendieron sus 250 acciones en United Theatres, Inc. por la suma de $25,000 era el valor de dichas acciones al ser adquiridas por ellos y no el de sus acciones en la corporación Bruno & González en el año en que las traspasaron por las 250 acciones de la United Theatres, Inc. Al discutir su anterior contención sostienen los querellantes que al realizarse dicho traspaso "surgió una transacción tributable si el costo original de las acciones de los peticionarios en Bruno & González era inferior al valor de las acciones de United Theatres, Inc." y que fué para el año 1931 que debió haberse determinado si ellos realizaron o no un beneficio al recibir las nuevas acciones, debiendo fijarse el mismo "tomando en consideración el costo original de las acciones comparado con el valor en el mercado de las acciones de United Theatres, Inc. en esa fecha."

En respuesta a esa contención el Tesorero alega que habiendo habido una "reorganización" a tenor de lo provisto por varios incisos de la sección 6 de la Ley de Contribuciones Sobre Ingresos—núm. 74 de 6 de agosto de 1925, pág. 401— tal contención es errónea y que a tenor con lo preceptuado en esa sección no surgió en 1931 transacción tributable alguna.

Resulta en verdad innecesario determinar si en el año 1931 surgió una transacción tributable o no o si por el contrario hubo una reorganización. Si el valor de los arrendamientos que de los teatros Capitol, Rialto y Tres Banderas tenía Bruno & González era el mismo ($40,000) tanto antes como inmediatamente después de constituirse la United Theatres, Inc., la lógica indica que en cuanto a éstos los querellantes admiten que la creación de la nueva entidad no produjo alteración alguna en el estado de cosas de una u otra corporación. Además, si bien con la organización de la United Theatres desapareció la competencia que Bruno & González y Ramos Cobián se hacían, nada hay en los autos que demuestre que para el año 1931 las acciones de la United Theatres tenían un valor distinto a las de la extinta corporación Bruno & González. Siendo todo ello así, no es menester resolver si surgió o no una transacción tributable para dicho año al adquirirse por los peticionarios las nuevas acciones, ya que el resultado final, como hemos visto, sería siempre el mismo.

■■ Como segunda premisa sostienen los querellantes en la alternativa que "en el supuesto de que la fórmula correcta para determinar la ganancia capital de los peticionarios al vender en el año 1939 sus acciones en United Theatres, Inc. fuera la determinada por el Tribunal de Contribuciones, o sea el valor de sus acciones en el año 1931 en la firma Bruno & González, entonces el tribunal tuvo ante sí suficiente prueba para sostener el escrito de los peticionarios fijando el costo de dichas acciones en la suma de $13,879.40."

Se recordará que en la nueva vista señalada las partes estipularon que de testificar los señores Ramos Cobián y Gon-

zález éstos declararían que el valor de los arrendamientos de los teatros Rialto, Capitol y Tres Banderas poseídos por la extinta corporación Bruno & González en el año 1931 era de $40,000. El Tribunal de Contribuciones, sin embargo, al dictar su resolución hizo caso omiso de los términos de la estipulación e indicó que entendía que los querellantes "no han probado en forma satisfactoria que nos permita anular las actuaciones del demandado, el valor de esos arrendamientos, y por ende, el costo de sus acciones," no habiendo "prueba siquiera del canon fijado de dichos contratos de arrendamiento, como uno de tantos factores para determinar el valor de los arrendamientos aún por expirar." Tampoco creemos que el tribunal recurrido cometiera este error.

Conforme dijo el Juez Learned Hand de la Corte de Apelaciones de los Estados Unidos para el Segundo Circuito en el caso de *Bryant* v. *Commissioner of Internal Revenue* (1935), 76 F. 2d 103, 105:

"...la apreciación de la prueba deberá hacerse por el tribunal llamado a dictar una decisión sobre los hechos. De ello no se desprende, sin embargo, que por razón de que la Junta no tenga que aceptar la opinión de peritos ella pueda negarse a dar a la propiedad valor de clase alguno. Ambos testigos declararon bajo juramento que los inmuebles valían más de $60,000; nos parece que es contrario a toda razón y que resulta arbitrario eliminar ese testimonio en su totalidad. En tales casos, aunque sea imposible llegar a una conclusión precisa, en distintas ocasiones se ha decidido que la Junta debe ejercitar su sano criterio, aunque resuelva todas las posibilidades en contra del contribuyente. (Citas.) Nos damos perfecta cuenta de que el resultado será especulativo, pero el Tesoro quedará protegido y la concesión de algún remedio resulta más justo que la negación de todo."

Estamos enteramente de acuerdo con el criterio así expresado por tan eminente jurista. Según el mismo, el Tribunal de Contribuciones debió dar algún valor, de tenerlo, a los arrendamientos poseídos por Bruno & González. Existe, no obstante, en derecho la presunción de que toda determinación

contributiva hecha por el Tesorero se presume correcta y que es al contribuyente a quien incumbe ofrecer prueba para destruir tal presunción. *Tesorero* v. *Tribunal de Contribuciones y Destilería Serrallés*, 70 D.P.R. 225, 230. En el caso de autos, es incuestionable que los querellantes no ofrecieron prueba suficiente para destruir semejante presunción. Ya se ha visto que el pasivo de la corporación Bruno & González excedía su activo y que el valor de los arrendamientos por ésta poseídos al negociar con la nueva corporación no se alteró en forma alguna con el traspaso. Por otra parte, hubo ausencia total de prueba respecto al canon de arrendamiento a pagarse por cada uno de los teatros poseídos, o de los beneficios que en cada uno o en la totalidad de ellos se obtenía para el año 1931, si es que los había. Habido todo ello en consideración y a la luz de la situación prevaleciente en Puerto Rico para aquel entonces, el Tribunal pudo concluir, a pesar de la prueba pericial que tuvo ante sí respecto a los arrendamientos, que el valor de éstos tanto en poder de Bruno & González como de la United Theatres al efectuarse la transacción a que tantas veces hemos aludido era cero y que al venderse ocho años más tarde por los querellantes las 250 acciones de la United Theatres éstos obtuvieron un beneficio neto de $25,000, cantidad de la cual correspondía la mitad a cada uno de ellos. No es posible decir, por tanto, que bajo tales circunstancias el tribunal recurrido cometiera el error imputádole.

*Debe confirmarse la resolución recurrida.*

Opinión disidente del Juez Presidente Señor Todd, Jr.

Disiento. Bajo la autoridad del caso de *Bryant* v. *Commissioner of Internal Revenue*, 76 F. 2d 103, y otros citados en él, considero que el Tribunal de Contribuciones de Puerto Rico erró al no dar, de acuerdo con la prueba, el valor que estimara razonable a los arrendamientos poseídos por Bruno & González a la fecha en que se hizo la transacción con la United Theatres, Inc. No puedo convenir con el razona-

miento de que el Tribunal de Contribuciones, no obstante la prueba pericial no controvertida, pudo concluir que el valor de los arrendamientos era cero.

Debería revocarse la resolución recurrida y devolverse el caso para ulteriores procedimientos.