J. Henri Brown, peticionario, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; Tesorero de Puerto Rico, interventor.

Número 275.

*Sometido:* 12 de noviembre de 1952. *Resuelto:* 13 de enero de 1953.

*Brown, Newsom & Córdova,* abogados del peticionario; *Hon. Procurador General Víctor Gutiérrez Franqui, José A. Malpica, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

El Tesorero notificó al peticionario J. Henri Brown varias deficiencias con relación a sus planillas de ingresos para los años de 1942, 1943 y 1944. Casi todas las deficiencias así notificadas resultaron de la eliminación de deducciones en las planillas del demandante sobre gastos y desembolsos en relación con una finca de frutas citrosas de su propiedad, además de la depreciación de huertos de toronjas, casa del mayordomo, maquinaria y utensilios utilizados en esa finca.

La base de la actuación del Tesorero consistió en su determinación al efecto de que la explotación por el peticionario de la referida finca no era un gasto necesario y ordinario del negocio del contribuyente y no se realizaba con fines de lucro o ganancia, sino más bien para fines de satisfacción personal o distracción del contribuyente, quien por muchos años se ha dedicado al ejercicio activo de la profesión de abogado.

El Tribunal de Contribuciones, considerando las alegaciones y la prueba practicada concluyó que era errónea la apreciación del Tesorero en cuanto al carácter de la explotación de la finca aludida, determinando que se trataba de la explotación de "una industria o negocio de este contribuyente". En consecuencia, ordenó que se concedieran al demandante las partidas reclamadas, con excepción de las que corresponden a la depreciación alegada. Es de la sentencia basada en esta última determinación que el peticionario ha recurrido para ante este Tribunal.

En lo pertinente, la sentencia del Tribunal de Contribuciones dice lo siguiente:

"En cuanto a la depreciación, si bien es cierto que el demandante tiene derecho a reclamarla sobre los equipos, maquinarias, y establecimientos de la finca bajo las disposiciones de la sección 16 (a) (8) de la Ley y podía reclamarla sobre la plantación de toronjas y otras plantaciones de productividad a largo plazo ya que el artículo 110 del Reglamento considera como inversión de capital los gastos incurridos para levantar plantaciones de esta naturaleza, su prueba fué insuficiente para sostener las cantidades reclamadas. Habiendo el demandado negado no sólo el derecho a las deducciones sino su cuantía además, al demandante correspondía demostrarnos con prueba clara y convincente el montante de la depreciación reclamada."

En términos generales, el peso de la prueba recae sobre el contribuyente a los fines de demostrar que las determinaciones del Tesorero han sido incorrectas. *Corporación Azucarera* v. *Tribl. Contribuciones*, 69 D.P.R. 204. Sin

embargo, se ha establecido una excepción a tal regla al efecto de que si las deficiencias señaladas por el Tesorero están basadas en determinaciones arbitrarias, excesivas o sin fundamento racional alguno basta, generalmente, con que ello se demuestre a satisfacción del Tribunal de Contribuciones, sin que el contribuyente venga entonces obligado a probar la contribución correcta que él tendría que pagar. En el caso de *Helvering* v. *Taylor*, 293 U.S. 507, 515, se dice lo siguiente:

"Es incuestionable que el peso de la prueba recae sobre el contribuyente para demostrar que la determinación del Comisionado es inválida . . . Frecuentemente, aunque no siempre, una prueba que derrote la conclusión del Comisionado es también suficiente para demostrar la cantidad correcta adeudada, si alguna . . . Pero cuando, como en este caso, la prueba presentada por el contribuyente demuestra que la determinación del Comisionado es arbitraria o excesiva, no puede resolverse razonablemente que, a menos que él pruebe la cantidad correcta que él debe pagar, él estaría obligado a pagar una contribución que realmente él no adeude. De acuerdo con los hechos probados por el contribuyente en este caso, la Junta debería haber resuelto que la contribución era arbitraria y que la determinación del Tesorero era inválida. Entonces, se debería haber celebrado una nueva audiencia, previa la correspondiente solicitud, en cuanto a la contribución correcta que debería cobrarse, si alguna. La doctrina que el Comisionado pretende que se establezca no es compatible con los grandes propósitos reparadores de la legislación que creó la Junta de Apelaciones Contributivas. La Corte de Circuito de Apelaciones actuó correctamente al revocar y devolver el caso para procedimientos posteriores compatibles con su opinión."

Al mismo efecto, véanse 9 Mertens, *Law of Federal Income Taxation*, sección 50.65, pág. 290; *Clements* v. *Commissioner of Internal Revenue*, 88 F.2d 791, 793; *Wilson Coal Land Co.* v. *Commissioner of Internal Revenue*, 87 F.2d 185, 189; *Booth Fisheries Co.* v. *Commissioner of Internal Revenue*, 84 F.2d 49, 51; *Industrial Trust Co.* v. *Commissioner of Internal Revenue*, 165 F.2d 142, 148. Basta demostrar, en apelación, que el método utilizado por el Teso-

rero es arbitrario, para que el caso sea devuelto al tribunal inferior. *Laird* v. *Commissioner of Internal Revenue*, 85 F.2d 598, 601; *Wodehouse* v. *Commissioner of Internal Revenue*, 177 F.2d 881, 883; *Strauss* v. *Commissioner of Internal Revenue*, 168 F.2d 441. En términos generales, cuando la determinación del Tesorero es arbitraria o excesiva, la insuficiencia de la prueba del contribuyente en cuanto a la contribución correcta, no justifica el que quede en pie la arbitrariedad y debe concederse una oportunidad para que se establezcan los hechos necesarios para una determinación justa. *Stock Yards Nat. Bank* v. *Commissioner of Internal Revenue*, 153 *F*.2d 708, 712; *B. F. Sturtevant Co.* v. *Commissioner of Internal Revenue*, 75 F.2d 316, 323.

■ En el caso de autos, las deficiencias en cuestión fueron señaladas por el Tesorero exclusivamente sobre la base de su determinación de que la finca del peticionario no se explotaba con fines de lucro o ganancia y de que los gastos alegados y las partidas relativas a depreciación no eran gastos necesarios y ordinarios del negocio del contribuyente y no eran partidas deducibles. El Tribunal de Contribuciones resolvió que tal determinación del Tesorero era errónea. Esa conclusión del tribunal a quo no ha sido impugnada. Si la única controversia (*issue*) planteada ante el Tribunal de Contribuciones se hubiese referido a la validez o incorrección de tal determinación, y el tribunal a quo hubiese resuelto que la determinación del Tesorero era errónea, el tribunal recurrido no hubiera podido ratificar la contribución erróneamente impuesta por el hecho en sí de que el contribuyente no había presentado prueba sobre la contribución correcta adeudada. En ese caso, nuestro deber hubiera sido devolver el caso al Tribunal de Contribuciones a los fines de la presentación de prueba sobre la contribución realmente adeudada, bajo un método legalmente correcto.

Sin embargo, en este caso, el Tesorero no se limitó, ante el Tribunal de Contribuciones, a alegar, erróneamente que

la depreciación reclamada no se refería al negocio o industria del contribuyente. En su demanda radicada en dicho tribunal el peticionario expuso la cuantía exacta por él reclamada como gastos deducibles de su finca, incluyendo la depreciación. En su contestación, el Tesorero, no solamente alegó extensamente que esas partidas no eran gastos ordinarios y necesarios del negocio del contribuyente, sino que también negó específicamente la cuantía reclamada, negando que el contribuyente hubiera incurrido en tales "gastos" o en gastos algunos. Al iniciarse la vista ante el tribunal a quo, las partes se expresaron en la siguiente forma:

"*Juez Presidente:* Muy bien. ¿De qué se trata?

"*Querellante:* Con la venia del Tribunal . . .

"Se trata de unas deficiencias que comprenden cuatro años: cuarenta y dos, cuarenta y tres, cuarenta y cuatro y cuarenta y siete.

"La principal controversia en este caso entendemos nosotros, por la historia que el mismo tiene ante el Negociado de Contribuciones sobre Ingresos del Departamento de Hacienda y a través de las alegaciones que están ante el Tribunal, se contrae a unos gastos que el contribuyente dedujo en sus planillas para estos años por concepto de la explotación de una finca en el barrio Espinosa, y que fueron rechazadas durante todos los años por el Tesorero y que dieron lugar principalmente a las deficiencias que están ante este Tribunal en el día de hoy.

"Hay otras partidas menores que no tienen que ver nada con esa finca.

"Según surge de la notificación de deficiencia—que está unida a la demanda, copia de ella—y según surge de la resolución del Negociado de Contribución sobre Ingresos después de la reconsideración y de la vista administrativa, estas partidas fueron rechazadas porque no fueron consideradas un gasto ordinario en la explotación de un negocio. Nosotros siempre entendimos durante todo el curso de estas deficiencias que las sumas reclamadas y la comprobación de las mismas no estaban en controversia, y sí únicamente la contención del Tesorero de que esta finca de Mr. Brown no era un negocio que él llevara

a efecto con fines de lucro y que por lo tanto, como cuestión de derecho, la deducción no era permisible en ninguno de los años.

"En la vista administrativa se presentaron en evidencia muchísimos libros en cuanto a la finca, esto es, que las deducciones él las comprobó a través de cheques cancelados, facturas y otros comprobantes. Esa prueba se presentó ante el oficial en la vista administrativa. Nosotros la hemos traído aquí en el día de hoy. Es bastante voluminosa y, si es necesario presentarla, la vamos a presentar. Requeriría algún estudio por parte del Tribunal para examinarla y comprobar los números.

"Ahora, la única cuestión que yo planteo es que este Tribunal resuelva, en vista de estos antecedentes, si eso está propiamente ante la Corte o si el único *issue* que está ante el Tribunal es si éste es un negocio que llevaba a efecto el contribuyente con fines de lucro o si no lo era.

"Estamos, pues, listos para presentar evidencia sobre los dos puntos, pero no queremos tomar el tiempo, innecesariamente del Tribunal, por lo que nos gustaría que eso se definiera.

"*Querellado:* Con la venia del Tribunal . . .

"Los *issues* se establecen por medio de las alegaciones. Las alegaciones de la querella son en el sentido de que por los años en controversia en este caso, o sea, cuarenta y dos, cuarenta y tres, cuarenta y cuatro y cuarenta y siete, el señor Henri Brown se dedicaba, como un negocio con fines de lucro, a la explotación de una finca de cuatrocientas cuerdas en el barrio Espinosa del municipio de Dorado, Puerto Rico; y que durante cada uno de dichos años incurrió en pérdidas por determinadas sumas que específicamente se alegan en la querella.

"En la contestación del querellado específicamente se alegan dos cuestiones: que la explotación de la finca de cuatrocientas cuerdas del señor J. Henri Brown no es negocio o industria, o sea que no constituye un *trade business* del querellante; y, que aun así, los gastos no han sido debidamente comprobados. Yo creo, entonces, que si el compañero está en condiciones de presentar esa prueba . . .

"*Querellante:* Sí. Estoy de acuerdo con el compañero. Está bien, de las alegaciones surge.

"*Querellado:* . . . ya que ha dicho que tiene aquí esa prueba . . .

"*Querellante:* Estamos de acuerdo. Sí. Es que yo pensé que el compañero había negado eso, como se niega generalmente, y una vez que se trajera el informe del oficial, donde se dijera con respecto a esas partidas, 'esto se comprobó . . .'

"*Querellado:* Es que en la vista administrativa no hubo prueba sobre determinados gastos.

"*Querellante:* Bueno, porque no tenían que ver nada con la finca.

"*Querellado:* No. Según alega el compañero en estos momentos, se presentó esa evidencia en la vista administrativa; pero allí no hubo, ni estuvo en *issue,* ni hubo prueba al respecto de ciertas partidas que se especifican en la querella ahora. De manera que el Tesorero nunca pudo pasar sobre eso.

"*Juez Presidente:* Pues entonces vamos adelante. Que se presente la prueba.

"*Querellado:* Pero lo que queremos decir, señor Juez, es que no importa lo que hubo en la vista administrativa y no importa lo que cubrió la resolución administrativa del Tesorero, lo que se va a resolver ante el Tribunal es lo que está trabado mediante las alegaciones."

Es obvio, por lo tanto, que el contribuyente expresó su conformidad a que el tribunal recurrido considerase, no solamente la determinación del Tesorero, sino que también los méritos intrínsecos de las partidas de gastos, incluyendo la de depreciación. Él presentó prueba en cuanto a la cuantía de la depreciación reclamada, pero esa prueba resultó ser insuficiente.

Habiendo sido debidamente planteada, en el caso de autos, la cuestión relativa a la cuantía de la depreciación, el Tribunal de Contribuciones actuó correctamente al resolver que el contribuyente no presentó prueba suficiente para sostener su alegación en cuanto a depreciación. Veamos.

■■ En el año 1931 la finca de frutas citrosas en cuestión pertenecía a la señora madre del peticionario, quien falleció en ese año y el peticionario adquirió el usufructo de la finca en virtud de disposiciones testamentarias de su referida causante. La base a los fines de calcular una concesión razonable por depreciación de propiedad usada en la

industria o negocio de un contribuyente es la misma que se utiliza para determinar la ganancia o pérdida habida en el caso de venta u otra disposición de la propiedad. Si la propiedad es recibida por herencia, tal base es el valor en el mercado al momento de la adquisición hereditaria.[1] Mertens, ob. cit., Vol. 3, sección 21.63, 21.64, págs. 439 y siguientes; Vol. 4, pág. 71, sección 23.55; *Hartley* v. *Commissioner*, 295 U. S. 216. El contribuyente en este caso no presentó prueba de clase alguna sobre el valor en el mercado de la propiedad en cuestión en la fecha en que él la adquirió por herencia. No habiéndose presentado prueba sobre la

---

[1] La sección 16 (a) de nuestra Ley de Contribuciones sobre Ingresos dispone, en parte, lo siguiente:

"Sección 16 (a).—Al computar el ingreso neto se admitirán como deducciones:

".     .     .     .     .     .     .     .

".     .     .     .     .     .     .     .

"(8) Una concesión razonable por el agotamiento, desgaste o deterioro de propiedad usada en la industria o negocio incluyendo una concesión razonable por propiedad obsoleta. . . ."

La sección 7 (c) de la misma ley dispone:

"La base sobre la cual, el agotamiento, gaste o desgaste y desuso han de concederse respecto a alguna propiedad será la misma que se dispone en la subdivisión (a) o (b) con el propósito de determinar la ganancia o pérdida en la venta u otra disposición de dicha propiedad."

Y la sección 7 (a) (5) dispone:

"La base para determinar la ganancia o pérdida derivada dè la venta u otra disposición de la propiedad adquirida después de febrero 28 de 1913, será el costo de dicha propiedad, con excepción de:

".     .     .     .     .     .     .     .

".     .     .     .     .     .     .     .

(5) Si la propiedad fué adquirida por manda, legado o herencia, la base será el justo valor de dicha propiedad en el mercado en el momento de dicha adquisición. Las disposiciones de este párrafo son aplicables: (A) A la adquisición de intereses de propiedad que el contribuyente hubiera recibido como resultado de un traspaso o de la creación de un fideicomiso en perspectiva de muerte o después de ésta, o con la intención de que surta efecto en posesión o disfrute de dichos intereses al ocurrir la muerte o después de ocurrida, o (B) A intereses de propiedad que el contribuyente hubiere recibido como resultado del ejercicio por una persona de un poder general de nombramiento testamentario o por escritura otorgada en previsión o con la intención de que tenga efecto en la posesión o disfrute de dichos intereses al ocurrir su muerte o después de ocurrida; . . ."

base de la depreciación, no procede la concesión de tal partida, en cuanto a este aspecto del caso. *National Weeklies v. Com'r ·of Internal Revene*, 137 F.2d 39, 42, 43.

▮ Ahora bien, el contribuyente alega que él sembró árboles de frutas citrosas después de haber adquirido la propiedad por herencia, debiendo ser el costo de tales siembras y cultivo la base de la depreciación. La prueba presentada por el contribuyente fué al efecto de que en los años en que reclamó la depreciación había alrededor de cien cuerdas sembradas; que el huracán de septiembre de 1932 destruyó bastantes árboles; que después de esa fecha el contribuyente sembró alrededor de mil árboles;(²) que el costo promedio de sembrar, cultivar y poner en producción una cuerda de frutas citrosas (por ejemplo, toronjas) es de quinientos dólares y que la vida útil de tales árboles es de treinta años, dando lugar a una depreciación de un tres y un tercio por ciento anual.

Aun asumiendo que una prueba a base de estimados de costos, y no a base de un costo real, sea suficiente a tal efecto, el contribuyente no presentó prueba sobre el número de cuerdas realmente sembradas y cultivadas por él. Con respecto a las cien cuerdas que había sembradas, en el año 1942, no hubo prueba en cuanto a cuántas cuerdas quedaron sembradas o en producción inmediatamente después del huracán de 1932, ni en cuanto a las cuerdas que sembró y cultivó el propio peticionario. Él declaró que había sembrado alrededor de mil árboles, pero no hubo prueba en cuanto a la cantidad de cuerdas en que estaban sembrados esos mil árboles, ni en cuanto al número de árboles por cuerda.(³) Por lo tanto, la prueba no fué suficiente para

---

(²) El contribuyente declaró lo siguiente: "Y yo tuve que sembrar árboles nuevos y empleé bastante tiempo y dinero para poner en buenas condiciones la finca. *Yo supongo* que se sembraron *alrededor de mil.*" (Bastardillas nuestras.)

(³) El testigo del contribuyente, Timoteo B. Souther, declaró, en parte, que en su propia finca de frutas citrosas él tenía seis mil árboles · en menos de cien cuerdas sembradas, lo que tiende a indicar que mil árboles

establecer el costo de los árboles, o sea, para demostrar la base de la depreciación.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Sifre no intervino.

se producen en mucho menos de cien cuerdas.  También declaró el contribuyente que las frutas y los árboles se perdían debido a otras causas.