ROBERT GRAHAM SPENCE, demandante y apelado, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y apelante.

Número 11264.

*Sometido:* 2 de mayo de 1955. *Resuelto:* 14 de junio de 1955.

Hon. Secretario de Justicia, José Trías Monge y J. C. Santiago Matos, Procurador Auxiliar, abogados del apelante; J. A. Cintrón Rivera, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El Secretario de Hacienda notificó una deficiencia al apelado Robert Graham Spence para el año contributivo 1948 en la cantidad de $3,927.45, incluyendo intereses hasta diciembre de 1952. Dicha deficiencia surgió al determinar el Secretario de Hacienda que la totalidad de la ganancia capital obtenida por Graham en la venta de ciertas propiedades inmuebles efectuada en 1948, tributaba en ese año.

No hay controversia en cuanto al monto de la ganancia obtenida en dicha venta por el contribuyente. Éste, sin em-

bargo, consideró que por tratarse de una venta a plazos o en pagos diferidos, la ganancia debía tributar prorrateada entre varios años y no en uno sólo, como lo determinó el Secretario de Hacienda. En esta forma quedó planteada la controversia ante el Tribunal Superior al cual recurrió Graham Spence. Después de un juicio en los méritos dicho tribunal dictó sentencia sosteniendo la contención del contribuyente.

Apeló el Secretario de Hacienda y en su alegato imputa a la corte a quo haber cometido error (1) al no concluir que el demandante no probó su caso, y (2) al concluir que los tres pagarés suscritos y entregados al vendedor demandante no tenían valor alguno.

De los autos surgen los siguientes hechos:

En diciembre de 1948 el apelado Robert Graham Spence vendió por escritura pública a la Asociación de Señoras Damas del Santo Asilo de Ponce, entidad con fines no pecuniarios, varias propiedades inmuebles por un precio que resultó ser en efecto de $50,000. En la escritura se hizo constar que la compradora pagaba el precio de venta en la siguiente forma: $5,000 que el vendedor confesó haber recibido en septiembre del mismo año, y $1,750 que también confesó haber recibido en igual fecha; $13,225 que le fueron entregados en el acto del otorgamiento de la escritura; y $30,000 que quedarían como precio aplazado, y que la compradora se obligó a pagar a razón de $10,000 anuales con intereses al 6% anual, representado dicho precio aplazado por tres pagarés otorgados por la compradora a favor del vendedor o a su orden, a vencer respectivamente los días 16 de diciembre de cada uno de los años 1949, 1950 y 1951. Dicho precio aplazado no se garantizó con hipoteca sobre los inmuebles vendidos u otro gravamen.

Durante el juicio las partes estipularon que la compradora Asociación de Señoras Damas del Santo Asilo de Ponce era una entidad con fines no pecuniarios; que dicha Asociación era solvente y que poseía otras propiedades. El de-

mandante apelado presentó en evidencia y la corte los admitió, dos de los tres pagarés que representaban el precio aplazado, debidamente cancelados por haber sido pagados días después de . sus respectivos vencimientos. Las partes no ofrecieron ninguna otra evidencia para probar si los susodichos tres pagarés tenían o no valor en el mercado a la fecha de su otorgamiento. (¹)

En vista de la prueba que tuvo ante sí el tribunal sentenciador forzoso es concluir que los errores señalados por el apelante fueron cometidos.

■■■ La sec. 5(c) de nuestra Ley de Contribuciones sobre Ingresos(²) dispone: "La cantidad realizada en la venta o cualquier otra disposición que se hiciere de la propiedad, será la suma de cualesquiera cantidades de dinero recibidas más el justo valor de la propiedad en el mercado que no se pagare en efectivo." Y la sec. 5(e) dispone que: "Nada de lo contenido en esta sección deberá interpretarse en el sentido de evitar (en el caso de una propiedad vendida bajo contrato para pagar a plazos) la contribución de aquella parte de cualquier plazo pagado, que represente ganancia o beneficio en el año en que dicho pago fuere recibido." De acuerdo con el art. 82 del Reglamento núm. 1 del Tesorero, hoy Secretario de Hacienda, para implementar la Ley de Contribuciones sobre Ingresos las ventas de bienes inmuebles con pagos diferidos de ordinario caen dentro de dos clases cuando se les considera con respecto a los términos de la venta, como sigue: (1) Transacciones a plazos, en que el pago inicial es relativamente bajo (generalmente menos de una cuarta parte del precio de venta) y los pagos diferidos usualmente pequeños y de cantidades reducidas, y (2) las ventas con pago aplazado

---

(¹) En sus conclusiones de derecho el tribunal a quo se expresa así:

"No hubo evidencia específica por ninguna de las partes en cuanto a si estos pagarés personales firmados por la Asociación compradora que es una entidad para fines no pecuniarios, tenían o no un valor en el mercado para el público en general."

(²) Esta sección estaba en vigor en el año 1948 y no ha sufrido enmiendas. Véase 13 L.P.R.A., sec. 663.

que no caen en el plan a plazos, en que hay un pago inicial sustancial (de ordinario no menos de una cuarta parte del precio de venta) garantizándose los pagos diferidos mediante hipoteca u otro gravamen. El art. 83 del mismo Reglamento dispone que en las transacciones incluídas en la clase (1) del art. 82, las obligaciones a plazos asumidas por el comprador de ordinario no deben tratarse como que tienen un valor razonable en el mercado, y el vendedor puede informar como ingreso de tales transacciones en cualquier año aquella proporción de cada pago de hecho recibida en dicho año que el ingreso bruto a realizarse cuando la propiedad sea pagada pueda tener sobre el precio bruto del contrato. Y de acuerdo con el art. 84, en la clase (2) del art. 82, si las obligaciones tienen un valor razonable en el mercado, las mismas deben considerarse como el equivalente de dinero en efectivo y la propiedad obtenida de la transacción es ingreso tributable para el año en que el pago inicial se hizo y la obligación se asumió.

Como hemos visto, el precio de venta en este caso fué de $50,000. El pago inicial fué de $20,000, o sea, más de una cuarta parte del precio de venta. La transacción, por tanto, no está incluída en la clase (1) del art. 82 del Reglamento. También hemos visto que las obligaciones asumidas por la compradora, evidenciadas mediante tres pagarés personales no están garantizadas con hipoteca u otro gravamen. Técnicamente la falta de esta condición eliminaría también la transacción de la clase (2) del art. 82.

De todos modos, este Tribunal ha dicho antes que las disposiciones contenidas en los arts. 82, 83 y 84 del Reglamento no son mandatorias, rígidas ni categóricas, sino meramente directivas. *Rubert* v. *Tribl. Contribuciones y Tes.*, 74 D.P.R. 51, 69. También dijimos en dicho caso que la "regla general, en ausencia de una disposición en contrario en un estatuto o reglamento, es al efecto de que debe aplicarse la doctrina de 'equivalentes de dinero en efectivo' a una venta a plazos, esto es, generalmente, cuando el precio de venta está representado por dinero en efectivo y por propiedad que tenga un justo

valor en el mercado, la totalidad de la ganancia debe ser reconocida en el año en que se efectúa la venta. 2 Mertens 41, sec. 11.05." Así lo dispone la sec. 5(c) de nuestra ley, y según ya hemos visto, no hay ninguna otra disposición legal en contrario. Dijimos además en el caso de *Rubert* que "el peso de la prueba recae sobre los contribuyentes para evitar el pago de la contribución en un solo año."

▰ En este caso el Secretario de Hacienda determinó, al notificar la deficiencia al contribuyente, que éste debía pagar la totalidad de la contribución sobre la ganancia, en el año en que se efectuó la venta. La decisión de dicho funcionario llevaba implícita su determinación de que las obligaciones asumidas por la compradora tenían un valor razonable en el mercado. Toda determinación contributiva hecha por el Secretario de Hacienda se presume correcta e incumbe al contribuyente presentar prueba para destruir tal presunción. *García v. Sec. de Hacienda*, 76 D.P.R. 503; *Brown v. Tribl. de Contribuciones*, 74 D.P.R. 264; *González v. Tribl. de Contribuciones*, 73 D.P.R. 26, 34; *Tes. v. Tribl. de Contribuciones*, 70 D.P.R. 225, 230. La determinación de dicho funcionario en cuanto a que las obligaciones asumidas por la compradora en este caso tenían un valor razonable en el mercado debe prevalecer a menos que sea rebatida con suficiente evidencia. *Owen v. United States*, 8 F. Supp. 707; *Marshal Field, Glore, Ward & Co., v. Commissioner* 16 B.T.A. 1299; *Nichols v. Commissioner of Int. Rev.*, 44 F.2d 157; *Whitlow v. Commissioner of Int. Rev.*, 82 F.2d 569; *Williams v. Commissioner of Int. Rev.*, 45 F.2d 61.

El apelado no presentó evidencia alguna para demostrar que los tres pagarés otorgados por la compradora, como evidencia de las obligaciones que ésta había asumido, no tenían un valor razonable en el mercado. Parece que descansó exclusivamente en el hecho de que la compradora es una entidad con fines no pecuniarios y en que las obligaciones no estaban garantizadas con hipoteca u otro gravamen. Esto de por sí sólo, no destruía la presunción de corrección que favorece

la determinación contributiva hecha por el Secretario de Hacienda. En adición a los anteriores hechos la prueba demostró, y esto en nada favorece la contención del contribuyente de que las obligaciones no tenían un valor razonable en el mercado, que la compradora es una entidad solvente, y que es dueña de otras propiedades, así como que dos de las tres obligaciones asumidas por ella fueron pagadas prontamente a su vencimiento. El hecho de que las obligaciones sean pagadas a su vencimiento es un factor considerado frecuentemente por las cortes para determinar su valor en el mercado aunque tal hecho no es, por sí sólo, concluyente en cuanto al valor de tales obligaciones al tiempo de ser contraídas. 2 Mertens 50, sec. 11.07; *Owen* v. *United States*, supra; *Piper* v. *Comm. of Int. Rev.*, 84 F.2d 560; *Whitlow* v. *Comm. of Int. Rev.*, supra.

En vista de lo expuesto debemos concluir que el apelado dejó de probar su caso al no presentar evidencia para destruir la presunción de corrección a favor de la determinación hecha por el Secretario de Hacienda, y que por el contrario en el récord hay prueba que tiende a fortalecer la realidad de dicha presunción.

*Por los motivos consignados se revoca la sentencia apelada, se declara sin lugar la querella y se devuelve el caso al tribunal de origen para ulteriores procedimientos.*