BORINQUEN HOME CORPORATION, demandante y recurrente
v. SECRETARIO DE HACIENDA DE PUERTO RICO, demandado
y recurrido.

Número: 12463.   Resuelto: 13 de diciembre de 1961.

*B. Sánchez Castaño* y *R. Rivero Cervera,* abogados de la recurrente; *J. B. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar* y *Stanley R. Segal, Procurador Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Presidente señor Negrón Fernández como Presidente de Sala y los Jueces Asociados señores Blanco Lugo y Dávila.

PER CURIAM: Mediante la escritura número 2800 otorgada en 28 de junio de 1949 ante el Notario Raúl Trujillo Santiago, la corporación recurrente Borinquen Home Corporation vendió a la corporación Caparra Commercial Corporation cinco solares del área comercial de la urbanización Caparra Heights, por precio total de $100,000, de los cuales se atribuyó la suma de $70,000 como valor de una edificación destinada a fines comerciales que enclavaba en uno de dichos solares.[1] El precio total de la compraventa efectuada fue aplazado en cuanto a su pago por un término de cinco años, prorrogable por cinco años adicionales a voluntad de la compradora, y

---

[1] El precio total de venta se distribuyó entre los distintos inmuebles en la siguiente forma:

Solar 1— $1,452.95
Solar 2— $1,452.95
Solar 3— $1,452.80
Solar 4—$22,907.50
Solar 5— $2,731.80

Conjuntamente con el valor de $70,000 de la edificación enclavada en el solar 4, arroja el precio total de $100,000.

garantizado mediante la constitución de una primera hipoteca sobre los inmuebles vendidos. (²)   Se convino además que la deudora hipotecaria "vendrá obligada a abonar al principal . . . el montante [sic] total del precio de venta de cualesquiera de los solares hipotecados o cualquier parte de ellos que sean vendidos por dicha deudora; viniendo a su vez obligada la acreedora hipotecaria a cancelar parcialmente la Primera Hipoteca y asimismo a liberar del gravamen hipotecario . . . constituido el solar o solares, una vez el precio de los mismos sea abonado a la hipoteca y efectivamente entregado a la acreedora hipotecaria".

En 13 de julio de 1949 la corporación deudora vendió los solares núm. 1, 2 y 3 por la suma de $4,360.70, y en cumplimiento de las obligaciones que contrajo en virtud de la cláusula antes transcrita, la abonó al principal del crédito hipotecario, que quedó reducido a $95,639.30.   Se otorgó el correspondiente documento público de cancelación parcial de hipoteca mediante la escritura núm. 1520 de la misma fecha ante el Notario Mariano Canales Delgado.   Dos meses después, en 13 de septiembre, el solar número 5 fue vendido por la suma de $10,000, y, abonado este precio al capital adeudado—escritura 2869 ante el Notario Raúl Trujillo Santiago—, quedó reducido a $85,639.30, garantizado su pago únicamente por la hipoteca que gravaba el solar 4 y la edificación que en el mismo enclavaba.   En enero de 1950 se hizo un abono en efectivo de $639.30.   El balance de $85,000 se recibió en 1953.

La contribuyente incluyó en su declaración de ingresos del año 1949–50 la parte proporcional del beneficio incluida en la suma de $15,000 recibida durante dicho ejercicio.   Indicamos, de paso, que no hay controversia alguna entre las partes sobre la forma en que se determinó el beneficio total obtenido

---

(²) En el contrato de hipoteca se incluyó un pacto de interés al cuatro por ciento anual pagadero por mensualidades vencidas y la deudora hipotecaria asumió las acostumbradas obligaciones de pago de contribuciones, seguros y otras usuales, cuyo incumplimiento causaba el vencimiento anticipado de la hipoteca.

por Borinquen Home Corporation en la transacción de venta. ([3])

La controversia principal se limita a determinar si es correcta la actuación del Secretario de Hacienda al incluir en el año 1949–50 el monto total del beneficio realizado por la contribuyente en la transacción reseñada, aun cuando el importe final del precio de venta se recibió tres años después. Así lo sostuvo el tribunal de instancia.

La sección 5(c) de la Ley de Contribución sobre Ingresos de 1924 (13 L.P.R.A. sec. 663 (c)) dispone que a los fines de la determinación del monto de ganancia o pérdida "la cantidad realizada en la venta o cualquier otra disposición que se hiciere de la propiedad, será la suma de cualesquiera cantidades de dinero recibidas más el justo valor de la propiedad en el mercado que no se pagare en efectivo". La sección 5(e) siguiente se refiere a la excepción reconocida cuando la propiedad se vende mediante un contrato "para pagar a plazos", en cuyo caso la contribución se impone sobre aquella parte del precio pagado que represente beneficio en el año en que se recibe el pago. ([4]) Los artículos 82, 83 y 84 del Reglamento núm. 1 aprobado en 17 de mayo de 1926 fueron promulgados

---

([3]) El beneficio se determinó en la siguiente forma:

| | | |
|---|---|---|
| Precio de Venta de los Solares | $30,000.00 | |
| Precio de Venta de la Edificación | $70,000.00 | |
| Total | | $100,000.00 |
| Costo de Solares | $2,831.97 | |
| Costo de Edificación | $69,171.51 | |
| Total | | $72,003.48 |
| Beneficio en Venta | | $27,996.52 |

([4]) Para la situación en cuanto a las ventas aplazadas de bienes inmuebles después de 1954, véase la sección 44(b) de la Ley Núm. 91 de 29 de junio de 1954 (13 L.P.R.A., Supl., sec. 3044) y artículos 44-2, 44-3, 44-4 y 44-5 del Reglamento (13 R.R.P.R. y sec. 3044-2). Sobre el historial de estas disposiciones sobre ventas a plazos, véase, Paul y Mertens, *Law of Federal Income Taxation*, vol. 1, sec. 12.01 y ss.

para instrumentar lo referente a las ventas con pagos diferidos y las ventas a plazos. Dichos artículos leen como sigue:

"Artículo 82.—*Venta de bienes inmuebles con pagos diferidos.*

"Las ventas de bienes inmuebles con pagos diferidos de ordinario caen dentro de dos clases cuando se les considera con respecto a los términos de la venta, como sigue:

"(1) Transacciones a plazos, en que el pago inicial es relativamente bajo (generalmente menos de una cuarta parte del precio de venta) y los pagos diferidos usualmente pequeños y de cantidades reducidas. Estos incluyen (a) las ventas en que hay una transferencia inmediata del título cuando se hace un pago inicial pequeño, quedando el vendedor protegido por una hipoteca y otro gravamen en cuanto a los pagos diferidos, y (b) convenios de compraventa que contemplan el que el traspaso no se haga al principio, sino después de que todos o una parte sustancial de los plazos convenidos se haya pagado.

"(2) Las ventas con pago aplazado que no caen en el plan a plazos, en que hay un pago inicial sustancial (de ordinario no menos de una cuarta parte del precio de venta) garantizándose los pagos diferidos mediante hipoteca u otro gravamen. Tales ventas se distinguen de ventas a plazos por el carácter sustancial del pago inicial y también, usualmente, porque el número de pagos diferidos es relativamente pequeño.

"Al determinar cómo deben tratarse estas clases al imponerse la contribución sobre ingresos, la cuestión en cada caso es si el ingreso a ser informado para fines de la contribución, debe basarse solamente en las cantidades de hecho recibidas en un año contributivo, o a base de toda la consideración establecida en los convenios para pagar en el futuro.

"Artículo 83.—*Venta de Bienes Inmuebles a Plazos.*

"En las dos clases de transacciones incluidas en la clase (1) en el artículo precedente, las obligaciones a plazos asumidas por el comprador de ordinario no deben tratarse como que tienen un valor razonable en el mercado, y el vendedor puede informar como ingreso de tales transacciones en cualquier año aquella proporción de cada pago de hecho recibida en dicho año que el ingreso bruto a realizarse cuando la propiedad sea pagada pueda tener sobre el precio bruto del contrato. Si la planilla se hace sobre esta base y el vendedor reposee la propiedad por falta de pago

del comprador, reteniendo los pagos anteriores, toda la cantidad de tales pagos, menos la ganancia anteriormente obtenida, serán ingresos del vendedor y así deberán informarse en la planilla para el año en que se reposeyó la propiedad, y ésta debe ser incluida en el inventario al costo original del vendedor (menos cualquier depreciación según ha sido ésta definida en los Artículos 128 y 129). Si el contribuyente opta como cuestión de práctica establecida consistentemente por tratar las obligaciones del comprador como que tienen un razonable valor en el mercado e informar el ingreso derivado de toda la consideración, pagos en efectivo y pagos a plazos, como ingreso para el año en que se hizo la venta, esto es permisible. De así tratarse, la regla prescrita en el Artículo 84 será aplicable.

"Artículo 84.—*Ventas de Bienes Inmuebles con Pagos Diferidos pero no a plazos.*—

"En la clase (2) del Artículo 82 las obligaciones asumidas por el comprador están mejor garantizadas debido al margen concedido por el sustancial primer pago, y la experiencia demuestra que la mayor parte de tales ventas son eventualmente cumplidas de acuerdo con sus términos. Si estas obligaciones tienen un valor razonable en el mercado, las mismas deben considerarse como el equivalente de dinero en efectivo y la propiedad obtenida de la transacción es ingreso tributable para el año en que el pago inicial se hizo y la obligación se asumió. Si el comprador no paga y el vendedor vuelve a obtener el título del terreno mediante convenio o procedimiento de ley y retiene los pagos anteriormente hechos, puede deducir de su ingreso bruto como pérdida en el año de reposesión cualquier exceso de la cantidad anteriormente informada como ingreso sobre la cantidad de hecho recibida, y debe incluir tales bienes inmuebles en su inventario al costo original para él (menos cualquier depreciación según ésta se define en los artículos 128 y 129). Si las obligaciones no tienen ningún valor razonable en el mercado, la cantidad del pago inicial será aplicada en contra y reducirá la base, según se dispone en el Artículo 7 y en los Artículos 32-44, de la propiedad vendida, y si excede de tal base, será tributable en cuanto al exceso. La ganancia o la pérdida se consuma cuando las obligaciones son satisfechas o se dispone de las mismas, calculándose sobre la diferencia entre la base, según se provee anteriormente, y la cantidad obtenida por ellas. Véanse los Artículos 32 y 125."

En *Rubert* v. *Tribl. Contribuciones y Tes.*, 74 D.P.R. 51 (1952) indicamos que estas disposiciones reglamentarias no son mandatorias, sino meramente directivas y que no tenían tal rigidez que requirieran al Secretario para que aceptara como venta a plazos toda transacción en la cual el pago inicial en efectivo fuera menor de una cuarta parte del precio total convenido. Señalamos además que por tratarse de una medida que permite la distribución del beneficio en distintos años debe ser interpretada en forma restrictiva contra el contribuyente.

Como podrá determinarse, los artículos transcritos cubren dos situaciones distintas: 1) ventas a plazos propiamente dichas, en cuyo caso se considera que las obligaciones a plazos contraídas por el comprador ordinariamente no tienen un valor razonable en el mercado; y 2) ventas con pagos diferidos, pero no a plazos, en cuyo caso las obligaciones se consideran como parte del precio si tienen valor en el mercado. En el primer caso, no sólo debe haber un pago inicial pequeño, sino que deben concurrir además plazos diferidos *"usualmente pequeños y de cantidades reducidas"*. En el segundo caso, el plazo inicial debe ser sustancial—ordinariamente no menor de una cuarta parte del precio de venta—y se distingue del primero en el número relativamente pequeño de los pagos diferidos.

En el presente caso las cantidades recibidas durante el año contributivo en que se efectuó la venta importaron solamente un quince por ciento del precio de venta, o sea, menos de una cuarta parte, pero luego solamente podía haber un pago diferido cuando se vendiera el inmueble hipotecado que conservó la compradora. Ciertamente es éste un ejemplo de una venta con pagos diferidos, pero no a plazos.[5] Véanse,

---

[5] Igual solución se impone si se considera aisladamente la transacción efectuada en cuanto al solar número 4, que era, a nuestro juicio, la forma correcta de enfocar la transacción, pues en cuanto a los otros solares no edificados, el beneficio total se recibió dentro del mismo año contributivo de la venta. Obsérvese que, aunque los traspasos se hicieron en una misma escritura, se trataba en efecto de cinco ventas separadas.

*Six Hundred and Fifty West End Ave. Co.* 2 B.T.A. 958 (1925); *B. B. Todd, Inc.,* 1 B.T.A. 762 (1925). ■

Por otro lado, la notificación al contribuyente de que debía pagar la contribución sobre el beneficio total realizado en la venta conllevaba implícitamente una determinación administrativa de que las obligaciones asumidas por la corporación compradora tenían un valor razonable en el mercado. *Spence* v. *Secretario de Hacienda,* 78 D.P.R. 406, 411 (1955). La prueba presentada no sólo está huérfana de la más leve insinuación de que la obligación hipotecaria asumida por la compradora no tenía valor en el mercado a la fecha en que se contrajo, sino que posiblemente indica lo contrario, ya que se hace referencia a que "en el año 1943 [*sic*] vendió la hipoteca por $85 mil dólares, lo declaró y pagó su 'income tax' " (T. E. pág. 4). En estas circunstancias no erró el tribunal de instancia al determinar que fue correcta la actuación del Secretario al incluir el beneficio total de la transacción en el año 1949–50. Cf. *Rubert* v. *Tribl. Contribuciones y Tes.,* 74 D.P.R. 51 (1952); *Carmen Centrale* v. *Descartes, Tes.,* 75 D.P.R. 340, 350–351 (1953); *Spence* v. *Secretario de Hacienda,* supra.

■ En cuanto al otro error señalado consistente en la negativa del tribunal a quo a considerar en el incidente sobre aprobación de cómputos la cantidad satisfecha en 1953 por la contribuyente como contribución sobre ingresos en relación con el beneficio realizado en dicho año al recibir el pago final de $85,000, baste decir que la sección 57(h) de la Ley de Contribución sobre Ingresos de 1924, según enmendada por la Ley núm. 9 de 8 de octubre de 1954 (13 L.P.R.A. sec. 775) impedía cualquier actuación favorable a la contribuyente. *Petrovich* v. *Secretario de Hacienda,* 79 D.P.R. 250 (1956). En este caso ni siquiera concurrirían las circunstancias de *Piñán Vda. Fajardo* v. *Srio. Hacienda,* 83 D.P.R. 314 (1961),

---

En cuanto al solar número 4 y la edificación, el precio de venta fue de $92,907.50, de los cuales se recibieron $7,907.50 en el año contributivo 1949–50. El balance de $85,000 se recibió totalmente en 1953.

en donde a pesar de que la contribuyente no podía reclamar el correspondiente reintegro por haber expirado el término de cuatro años al efecto prescrito por la ley, ratificamos lo resuelto en *Petrovich*. Como cuestión de hecho, para el 28 de marzo de 1953, fecha en que el Secretario notificó su determinación a la apelante sobre la tributación del beneficio total en 1950, ella podía reclamar el reintegro de lo pagado en 1953, pues aún no habían transcurrido cuatro años del pago de la contribución.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 30 de noviembre de 1954.*

