Francisco Mújica Dueño, demandante y apelante, v. Rafael Sancho Bonet, Tesorero de Puerto Rico, demandado y apelado.

Núm. 8507.—*Sometido:* Marzo 16, 1943. *Resuelto:* Mayo 18, 1943.

*J. J. Ortiz Alibrán,* abogado del apelante, *Hon. Procurador General Interino M. Rodríguez Ramos* y *M. Velázquez Flores, Subprocurador,* abogados del apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Éste es un pleito sobre devolución de contribuciones pagadas bajo protesta, tramitado y resuelto de acuerdo con la ley que regía con anterioridad a la creación del Tribunal de Apelación de Contribuciones. Están envueltas en el mismo la constitucionalidad de las secciones 12 y 13 de la Ley núm. 74 de 1925 (pág. 401) conocida como Ley de Contribuciones sobre Ingresos de 1924 y la cuestión de si cierta suma depo-

sitada en un banco que no pudo cobrarse en el año contributivo por haberse puesto ese año el banco en administración judicial, puede o no deducirse como pérdida total a los efectos del cálculo de la contribución sobre ingresos del repetido año.

La demanda alega cuatro causas de acción. El demandado la excepcionó y la contestó. Luego ambas partes llegaron a un acuerdo y sometieron a la corte una estipulación sobre los hechos y el derecho a considerar y a resolver.

Se trata de deficiencias en sus declaraciones sobre ingresos correspondientes a los años 1930, 1931, 1932 y 1933, notificadas por el Tesorero demandado al contribuyente demandante ascendentes a $5,409.19, $8,154.65, $2,386.87 y $591.80 respectivamente.

No conforme el contribuyente, recurrió para ante la Junta de Revisión e Igualamiento. La Junta redujo las cantidades cobrádasle como sigue, la de 1930 a $1,662.75, la de 1931 a $2,485.76, la de 1932 a $58.74 y la de 1933 a $40.62.

El contribuyente pagó las últimas sumas bajo protesta e inició este pleito ante la Corte de Distrito de San Juan, reclamando la devolución de lo pagado por ser la ley en que se basó el cobro—Ley núm. 74 de 1925, secciones 12 y 13—anticonstitucional, por discriminatoria y contraria al principio de uniformidad que establece la Ley Orgánica en su sección 2, párrafo 22, y además, en cuanto a la contribución correspondiente al año 1931, porque el Tesorero se negó a tomar en consideración la pérdida de $16,532.72 que el contribuyente reclamó por razón del cierre del Banco Comercial de Puerto Rico, puesto ese año en administración judicial.

La estipulación a que nos referimos fué sometida a la corte en mayo 31, 1939, y el pleito quedó resuelto el dos de enero de 1942 por sentencia declarando la demanda sin lugar. Fué contra esa sentencia que el contribuyente interpuso el presente recurso de apelación, imputando a la corte sentenciadora los dos errores que siguen:

"Primer error: Haber resuelto que la partida de $16,532.72, congelada en el Banco Comercial de Puerto Rico, al cerrar sus operaciones en 1931, no era deducible del ingreso bruto del demandante en el referido año.

"Segundo error: Haber resuelto que la Ley de Contribución sobre Ingresos núm. 74, de 1925, en cuanto impone contribuciones progresivas, secciones 12 y 13 de dicha ley, es constitucional, y por lo tanto, que dichas contribuciones son uniformes."

Parece lógico que comencemos nuestro estudio por el segundo señalamiento de error, ya que se refiere a la totalidad de las contribuciones reclamadas.

No nos detendremos mucho en su consideración. Bastará que digamos que la decisión de esta corte en el reciente caso de *Ballester Ripoll* v. *Tribunal de Apelación de Contribuciones,* 61 D.P.R. 474, resuelve el punto en controversia en contra del apelante en los siguientes términos, copiando del resumen:

"En relación con los tipos progresivos de contribución en ella provistos, la Ley de Contribuciones sobre Ingresos sólo dispone tipos mayores sobre niveles mayores de ingresos pero no diferentes tipos de contribución en distintos sitios de Puerto Rico. Por tanto, dichos tipos contributivos no infringen la cláusula de uniformidad de nuestra Carta Orgánica."

Queda, pues, el pleito reducido a la reclamación de la contribución correspondiente al año 1931—$2,485.76.

Los hechos referentes a ese extremo tales como fueron aceptados por las partes, son:

"Alega el demandante que la contribución tasada como deficiencia para el año 1931 y de que se hace mención en los hechos precedentes, ha sido originada por haber el demandado enmendado su ingreso neto en la cantidad de $23,358.92, rechazando dicha partida como deducción, y que corresponde a los siguientes particulares:

"(a) Pérdida por razón del cierre del Banco Comercial de Puerto Rico sometido a sindicatura en el año 1931, año en el cual el demandante consideró esta cuenta totalmente perdida, $16,532.72.

"* * * * * * *

"El Banco Comercial de Puerto Rico es y era en las fechas a que se refiere este pleito una institución bancaria funcionando de acuerdo

con las Leyes de Puerto Rico con oficina principal en San Juan y sucursales en varias poblaciones de la Isla. Dicho banco fué sometido a administración judicial en octubre de 1931, de acuerdo con providencia dictada por la Corte de Distrito de San Juan el día 19 de dichos mes y año. En esta fecha cerró el banco sus puertas y suspendió toda clase de operaciones corrientes, viéndose imposibilitado el demandante de retirar sus fondos en cuenta de ahorros ascendentes a $22,043.63, en el período comprendido entre la fecha del cierre y el 31 de diciembre de 1931. El demandado consideró como pérdida únicamente el 25 por ciento de esta suma, o sea, $5,510.91, rechazando la diferencia montante a $16,532.72. A pesar de las gestiones que hizo el demandante no pudo retirar del banco parte alguna de los $22,043.63 en dicho período que terminó en diciembre 31 de 1931. Posteriormente, el demandado ha recibido las siguientes sumas de su depósito de $22,043.63: en julio 8 de 1933, $5,276.47; en agosto 15 de 1933, $791; en abril 2 de 1934, $752.15; en agosto 15 de 1934, $714.54; en agosto 5 de 1935, $678.81; en mayo 2 de 1936, $644.87; en septiembre de 1936, $612.63; en octubre 10 de 1938, $582. Total, $10,052.47.

"Designado el administrador judicial en dicho año 1931 el banco continuaba cerrado el 31 de diciembre de dicho año, no pudiendo precisarse en qué fecha podría abrir sus puertas nuevamente ni pudiendo determinarse la cantidad de su depósito que el demandante podría recibir más adelante. El activo del banco en la fecha en que se nombró el administrador judicial era mayor que su pasivo, pero era de lenta realización y para aquella fecha carecía el banco del numerario y efectivos necesarios para cubrir el pago de sus obligaciones inmediatamente exigibles, por lo que se decretó la sindicatura para evitar multiplicidad de procedimientos judiciales y embargos sobre sus bienes, lo que traería como consecuencia la depreciación de su activo en detrimento de sus depositantes y acreedores.

"\*     \*     \*     \*     \*     \*     \*

"Aunque el demandante acepta como ciertos los hechos contenidos en el apartado 8 de las cuestiones de hecho de la presente estipulación, alega, sin embargo, que tales hechos no tienen pertinencia con la situación en que se hallaba el Banco Comercial el 31 de diciembre de 1931."

La ley aplicable es la sección 16, inciso 7 de la Ley de Contribuciones sobre Ingresos, Leyes de 1925, págs. 439, 443, que lee como sigue:

"Sección 16.—(a) Al computar el ingreso neto se admitirán como deducciones:

" * * * * * * *

"(7) Débitos que se hayan juzgado incobrables y que hayan sido eliminados dentro del año contributivo (o, a discreción del Tesorero, una suma razonable como reserva para cuentas malas); y cuando se convenza de que una deuda puede ser cobrable solamente en parte, el Tesorero puede permitir la eliminación parcial de dicha deuda."

Y el apelante sostiene que de acuerdo con la misma tenía derecho a deducir como dedujo de sus ingresos en el año 1931 la cantidad que tenía depositada en el Banco Comercial de Puerto Rico que se vió impedido de retirar por haberse sometido dicho banco a administración judicial, y que juzgó incobrable, y cita en apoyo de su contención varias decisiones, entre ellas como la "más propiamente aplicable" la de esta corte en *Soto Gras* v. *Domenech, Tesorero,* 45 D.P.R. 276. Según el apelante el juicio que forme el contribuyente es decisivo, a menos que carezca por completo de fundamento.

No estamos conformes. El propio caso que invoca—*Soto Gras* v. *Domenech, Tesorero,* supra—le es adverso, ya que en él no obstante resolverse a virtud de las circunstancias concurrentes la cuestión en favor del contribuyente, esta Corte tuvo buen cuidado de decir, "Las partes no han agotado la jurisprudencia y la cita de autoridades hecha por la corte inferior no nos satisface enteramente. Una de ellas, por ejemplo, *Avery* v. *Commissioner of Internal Revenue,* 22 F. (2d) 6, 55 A.L.R. 1277, se refiere más bien que a otra cosa, al año en que una deuda mala puede ser deducida. No decide, y la ley parece ser en sentido contrario, que la opinión del contribuyente debe aceptarse como definitiva. Indudablemente en ausencia de otra prueba, la posición tomada por el contribuyente debe tener algún peso, pero el Tesorero de Puerto Rico no queda necesariamente obligado por ella." *Soto Gras* v. *Domenech, Tesorero,* 45 D.P.R. 276, 277.

De acuerdo con los propios términos de la ley es el Tesorero el que tiene la última palabra, no para pronunciarla

arbitrariamente, por supuesto, si que para considerando to-
das las circunstancias que concurran y armonizando los inte-
reses del contribuyente con los del tesoro público, en el ejer-
cicio de su discreción, resolver la cuestión en justicia.

¿Lo hizo así en este caso? Los hechos permiten contes-
tar que no sólo no abusó de su poder discrecional si que lo
usó debidamente al negarse a eliminar la totalidad del dé-
bito, permitiendo sólo una eliminación parcial de la cuarta
parte del mismo en el año en que el banco cesó en sus pagos
normales por habérsele sometido a una administración judi-
cial. En aquel entonces el activo del banco era superior a
su pasivo y si bien es cierto que el contribuyente no pudo
retirar todo lo que en él tenía en el dicho año de 1931, había
motivos justificados para creer que podría hacerlo en el fu-
turo, como lo ha venido demostrando lo ocurrido posterior-
mente. A la fecha de la estipulación, mayo de 1939, había
logrado el contribuyente retirar $10,052.47.

La interpretación que hemos dado a la ley puertorriqueña
está conforme con la dada a la ley federal sobre la materia
por las cortes nacionales incluyendo la Corte Suprema.

Ambas leyes se diferencian sólo en que en la federal se
usa la palabra "ascertained" en vez de "judged" usada en
la insular. Creemos, con el juez sentenciador, que la dife-
rencia no es sustancial y, por tanto, que es aplicable en
Puerto Rico la jurisprudencia federal interpretativa del pre-
cepto.

Varias son las decisiones que podríamos citar, pero con-
sideramos suficiente referirnos a la de la Corte Suprema na-
cional en *Spring City Co.* v. *Commissioner*, 292 U. S. 182,
185. La opinión de la corte fué emitida por su entonces Juez
Presidente Señor Hughes. En lo pertinente, dice:

"La Sección 234(*a*) (5) de la Ley de Rentas de 1918 disponía
la deducción de las deudas incobrables, al computar el ingreso neto,
como sigue: 'Deudas determinadas incobrables y eliminadas durante
el año contributivo.' Bajo esta disposición el contribuyente no podía
establecer su derecho a la deducción simplemente eliminando la deuda.

Debe determinarse que no tenía valor alguno (*worthless*) dentro del año contributivo. En el presente caso, cn 1920, la deuda era incierta con motivo de la quiebra del deudor pero no constituía una pérdida total. Lo que eventualmente podía ser recobrado de la misma era incierto, pero razonablemente podía esperarse que se recobraría alguna cantidad. El síndico continuó los negocios y se abonaron a los acreedores sumas sustanciales. De acuerdo con esto, la Junta de Apelaciones Contributivas decidió que el peticionario no había sufrido una pérdida en 1920 'igual al importe total de la deuda' y que la deuda no era por tanto deducible en su totalidad en ese año.

"La cuestión, entonces, es si el peticionario tenía derecho a una deducción en 1920 por aquella parte de la deuda que cn definitiva— en la liquidación de la quiebra—probó ser incobrable. Alega el gobierno, y la Corte de Circuito de Apelaciones resolvió, que tal deducción de una parte de la deuda no estaba autorizada por la Ley de 1918. El gobierno señala el significado literal de las palabras de la ley, la interpretación administrativa establecida y la actuación del Congreso reconociendo dicha interpretación. 'Worthless' [traducido en nuestra ley por 'incobrable'], dice el gobierno, significa sin valor, sin uso o mérito. Ésta fué la interpretación que el Departamento de Tesorería dió a la ley. El Artículo 161 del Reglamento 45 (aplicable a las corporaciones por el Artículo 561) disponía que 'una cüenta meramente eliminada' no es deducible. A ese mismo efecto estaba redactada la correspondiente disposición de los Reglamentos bajo la Ley de Rentas de 1916.

"El derecho de eliminar y deducir una *parte* de una deuda cuando durante el año contributivo se determinó que la deuda es recobrable sólo parcialmente, fué concedido por la Ley de 1921. Por medio de esa ley, la §234(*a*) (5) fué enmendada de manera que leyese como sigue: 'Deudas determinadas incobrables y eliminadas durante el año contributivo (o, en la discreción del Comisionado, una adición razonable a la reserva de deudas malas); y cuando se estuviere satisfecho de que una deuda es recobrable sólo en parte, el Comisionado puede permitir que esa deuda se elimine en parte.' Creemos que el verdadero significado de esta disposición, al compararse con la anterior, es que el Congreso, reconociendo el significado de la disposición existente y su interpretación correcta por el Departamento de Tesorería, deliberadamente tuvo cn mente hacer un cambio en la ley. *Shwab* v. *Doyle*, 258 U. S. 529, 536; *Russell* v. *United States*, 278 U. S. 181, 188.

"Esta intención se demuestra claramente por la declaración contenida en el informe del Comité de Medios y Asignaciones de la Cámara de Representantes en relación con la nueva disposición. El Comité dijo explícitamente—'Bajo la presente ley las deudas incobrables son deducibles en su totalidad o en nada.' Aunque el cambio fué eliminado por el Comité de Hacienda del Senado, la disposición fué restaurada por el Senado en sala pasando a ser ley según fué recomendada por la Cámara. El Reglamento 62 promulgado por el Departamento de Tesorería de conformidad con la Ley de 1921 hizo el cambio correspondiente en el Artículo 151. El Departamento de Tesorería se adhirió consistentemente a su reglamentación anterior al resolver sobre deducciones solicitadas al amparo de la Ley de 1918.

"En numerosas decisiones la Junta de Apelaciones Contributivas ha asumido idéntico punto de vista en relación con la disposición de la Ley de 1918. Véanse v. g., *Appeal of Steele Cotton Mill Co.,* 1 B. T A. 299, 302; *Western Casket Co.* v. *Commisisoner,* 12 B. T. A. 792, 797; *Toccoa Furniture Co.* v. *Commissioner,* 12 B. T. A. 804, 805. En el presente caso se llegó a un resultado contrario en deferencia a las opiniones expresadas por la Corte de Circuito de Apelaciones para el Segundo Circuito en *Sherman & Bryan, Inc.* v. *Commissioner,* 35 F. (2d) 713, 716, y por la Corte de Apelaciones del Distrito de Columbia en *Davidson Grocery Co.* v. *Lucas,* 59 App. D. C. 176; 37 F. (2d) 806, 808,—resultados que son opuestos a los de la Corte de Circuito de Apelaciones para el Octavo Circuito en *Minnehaha National Bank* v. *Commissioner,* 28 F. (2d) 763, 764, y para el Quinto Circuito en *Collin County National Bank* v. *Commissioner,* 48 F. (2d) 207, 208.

"Somos de opinión que la §234(a) (5) de la Ley de 1918 autorizaba únicamente la deducción de una deuda determinada incobrable y eliminada durante el año contributivo; y que no autorizaba la deducción de una deuda que no fué determinada para aquel entonces como incobrable, sino que era recobrable parcialmente, siendo incierta la cantidad que no era recobrable. Aquí, en 1923, en la liquidación la deuda que entonces continuó no satisfecha, después de deducir los dividendos recibidos, se determinó como incobrable y el Comisionado permitió la deducción a ese efecto ese año."

Tampoco fué, pues, sometido el primero de los errores señalados. Un veinticinco por ciento del débito fué eliminado. Cerca de un cincuenta por ciento fué cobrado después. Nada consta sobre la liquidación final del banco. Se actuó

de acuerdo con la ley y la jurisprudencia. Ningún derecho ha sido violado o desconocido. El contribuyente tiene aún el de deducir lo que resulte incobrable—si algo resulta—cuando termine la liquidación del banco, en el año de la liquidación que será el año en que se convierte en realidad la pérdida.

*La actuación del Tesorero fué pues correcta y en su consecuencia debe declararse el recurso sin lugar y confirmarse la sentencia apelada.*