Sucn. Marcial Suárez et al., demandantes y apelantes, *v.*
Secretario de Hacienda, demandado y apelado.

Número 11813.

*Sometido:* 26 de marzo de 1959. *Resuelto:* 28 de marzo de 1961.

322

*Víctor Gutiérrez Franqui, Luis F. Sánchez Vilella* y *C. Morales, Jr.,* abogados de los apelantes; *Hon. Secretario de Justicia Hiram R. Cancio (José Trías Monge, ex-Secretario de Justicia,* en el alegato) y *J. C. Santiago Matos, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El entonces Tesorero de Puerto Rico notificó a don Marcial Suárez deficiencias en su contribución sobre ingresos para los años 1941 a 1946, ambos inclusive, ascendentes a la suma total de $369,576.67.

Don Marcial Suárez falleció el día 19 de diciembre de 1949 dejando una sucesión compuesta por su viuda doña

Encarnación Fuentes, sus hijos legítimos José y Juan Suárez Fuentes y su nieto menor de edad, Johnny Suárez Miranda. Por resolución de 6 de febrero de 1950, la Corte de Distrito, Sala de San Juan, nombró Administrador Judicial de los bienes del finado don Marcial Suárez a su hijo y albacea testamentario, don Juan Suárez Fuentes.

No estando conforme dicha Sucesión con las deficiencias antes indicadas, solicitó reconsideración de las mismas, y después de varias vistas administrativas, negociaciones y conferencias con los agentes del Tesorero se llegó a un acuerdo con la Sucesión sobre la cantidad a pagar por deficiencias en cada uno de los años ya mencionados, quedando las mismas reducidas a la cantidad total de $161,276.96. [1]

En cuanto al año 1943, el Tesorero se negó a admitir como deducibles ciertas partidas reclamadas como pérdidas de don Marcial Suárez para dicho año y que consistían en cuentas alegadamente incobrables montantes a $100,164.33. La Sucesión firmó impresos suministrados por el Departamento de Hacienda, renunciando el derecho a la notificación de la contribución. Dicha renuncia se refería a los años 1941, 1942, 1944, 1945 y 1946. Se acordó que en cuanto al año 1943, la Sucesión recurriría ante el tribunal correspondiente para que éste determinase la legalidad de las deducciones reclamadas por la Sucesión. Como consecuencia inevitable de este acuerdo, al firmar la renuncia de la notificación en cuanto a la tasación de la contribución de 1944, la Sucesión hizo la salvedad de que dicha renuncia estaba condicionada a la resolución que pudiera recaer sobre el año contributivo de 1943, puesto que el Departamento de

---

[1] Estas cantidades fueron las siguientes:
"1941—$ 3,667.02............Recibo núm. F-200012
"1942— 3,965.03............ ” núm. F-300012
"1943— 25,721.29............Notificación de Oct. 18, 1951
"1944— 42,897.13............Recibo núm. F-513421
"1945— 35,363.36............ ” núm. F-611475
"1946— 75,381.42............ ” núm. F-767535”

Hacienda tendría necesariamente que arrastrar al año 1944 cualquier exceso en las pérdidas del año 1943, no acreditado a ese año.

En 18 de octubre de 1951, el Tesorero notificó a la Sucesión una deficiencia en la declaración de ingresos rendida por don Marcial para el año 1943, montante a $25,721.29. Esta notificación se hizo después de haberse celebrado vistas administrativas y haber el Tesorero rechazado las deducciones reclamadas [débitos incobrables] para dicho año por la Sucesión.

En noviembre de 1951 la Sucesión de don Marcial Suárez radicó ante el anterior Tribunal de Contribuciones una querella contra el Tesorero de Puerto Rico. Comparecieron en dicha querella todos los miembros de dicha sucesión, a saber: la viuda doña Encarnación Fuentes, los hijos legítimos José y Juan Suárez Fuentes y el nieto Johnny Suárez Miranda y además el Administrador Judicial, Juan Suárez Fuentes. Alegaron dos causas de acción. En la primera, después de exponer los hechos que hemos relatado al principio, alegaron que la deficiencia notificada para el año 1943, "es injusta, arbitraria e ilegal, porque el Tesorero de Puerto Rico se negó a admitir varias partidas que más adelante se especificarán en el exhibit 'A' que se acompaña a esta querella, que arrojan una totalidad de cien mil, ciento sesenta y cuatro dóllars con treinta y tres centavos ($100,164.33), cuyas partidas la Sucesión querellante alega que son cuentas incobrables a que tiene derecho a deducir del ingreso neto del año de 1943"; que el demandado Tesorero de Puerto Rico, por medio de sus agentes, "aceptó y admitió que las cuentas eran acreencias a favor del contribuyente; que las mismas representaban pérdidas bona fide sufridas por el contribuyente, pero que de todas maneras, no son deducibles en el año 1943".

En la segunda causa de acción alegaron:

"2.—Alegan los demandantes que, a pesar del acuerdo habido con el demandado, por medio de sus agentes debidamente calificados, el demandado procedió a imponer una contribución sobre

ingresos al finado Don Marcial Suárez Suárez para el año 1944, sin tener en cuenta ni considerar la forma condicional en que la aceptación de la tasación hecha por el Negociado de Contribuciones Sobre Ingresos fue aceptada por los demandantes. Y en tal forma procedió a imponerle al contribuyente una contribución de cuarenta y dos mil, ochocientos noventa y siete dóllars con trece centavos ($42,897.13).

"Alegan los demandantes que esta acción del demandado equivale a tasarle al finado Don Marcial Suárez Suárez una contribución sin haberle sido notificada de antemano, lo cual hace nula y arbitraria la tasación de la dicha contribución.

"Y, alegan además los demandantes, que al tasar en esta forma dicha contribución, el demandado, por medio de sus agentes debidamente capacitados, violó el convenio de que la contribución para el año 1944 estaría sujeta al resultado de la querella que interpusiera el contribuyente ante este Hon. Tribunal de Contribuciones para determinar el montante impuesto de 1944."

Contestó el querellado aceptando algunos hechos y negando aquellos otros hechos materiales que podrían, de ser probados, justificar una sentencia favorable a los querellantes. Después de celebrarse un juicio en los méritos, el tribunal a quo dictó sentencia declarando sin lugar la querella.(²) Los querellantes imputan al tribunal sentenciador la comisión de los siguientes errores:

"I. El tribunal inferior carecía de *jurisdicción* para considerar los méritos de la deficiencia notificada para el año 1943.

"II. Cometió error el tribunal inferior al no anular la tasación de deficiencia para el año 1944.

"III. El tribunal inferior cometió error al concluir como cuestión de hecho que el contribuyente, Marcial Suárez, había hecho gestiones con posterioridad al año 1943 para el cobro de las cuentas incobrables reclamadas como deducción.

---

(²) Una moción de reconsideración de sentencia fue declarada sin lugar por haber sido la misma radicada fuera de término. El tribunal a quo también declaró sin lugar una moción de nuevo juicio presentada por los querellantes. Nada se plantea en este recurso en relación con las resoluciones recaídas en ambos incidentes.

"IV. El tribunal inferior cometió error al concluir que era necesaria la eliminación de las cuentas incobrables de los libros del contribuyente.

"V. El tribunal inferior cometió error además al no declarar con lugar la demanda en todas sus partes."

▆▆▆ Discutiendo el primer error, los recurrentes sostienen que como el Tesorero nunca hizo una notificación y tasación de la contribución a nombre de los herederos del causante Marcial Suárez, ni de su viuda doña Encarnación Fuentes, el tribunal a quo carecía de jurisdicción para entender y resolver el caso. Arguyen que al disolverse la sociedad de gananciales por muerte de don Marcial Suárez, su viuda doña Encarnación Fuentes era responsable del 50 por ciento de la contribución tasada a don Marcial para los años 1943 y 1944 y que el Tesorero debió hacerle a ella personalmente la notificación preliminar y la final que disponía la ley. En cuanto a los hijos y al nieto de don Marcial sostienen que estos son responsables de cualquier deficiencia determinada por el Secretario de Hacienda en la medida que ésta afecta a su causante don Marcial Suárez, y no como contribuyentes principales; que si se consideraran *contribuyentes*, entonces el Tesorero debió notificarlos a ellos de la deficiencia, cosa que no hizo; pero que como no son contribuyentes y no fijando la Ley de Contribuciones sobre Ingresos procedimiento alguno para el cobro a unos herederos de la contribución adeudada por su causante, el único remedio del Tesorero era proceder por la vía judicial dentro de los siete años que requería la ley.

Por el segundo señalamiento se imputa error al tribunal sentenciador al no anular la tasación de deficiencia para el año 1944. Como fundamento aducen los recurrentes la misma falta de notificación de la deficiencia. Su tesis, expuesta ya en el primer error, es que la notificación de la deficiencia había que hacerla en proporción de un 50 por ciento de su monto a la viuda y el otro 50 por ciento a los herederos en proporción a sus respectivas participaciones hereditarias.

Sostienen además que la renuncia a la notificación final de la contribución del año 1944, carece de validez porque (1) con anterioridad a la aprobación de la Ley Núm. 91 de 8 de octubre de 1954, enmendando la Ley de Contribuciones sobre Ingresos de 1924 (sec. 27), no había autorización legislativa para renunciar a las restricciones sobre la tasación y cobro de la totalidad o de cualquier parte de la contribución, incluyendo la renuncia del período fijado por ley para la imposición de la contribución (sección 60), y (2) el documento de renuncia no fue firmado ni por la viuda ni por los herederos.

Por las razones que expondremos inmediatamente, no nos detendremos a examinar los argumentos de las querellantes respecto a la nulidad de la notificación de las deficiencias y a la nulidad del documento de renuncia.

Los demandantes recurrentes aceptaron la corrección o legalidad de la notificación de deficiencias tanto administrativamente como en el tribunal sentenciador. Fue a base de la notificación que ahora impugnan, que se celebró, según alegan en su demanda, un gran número de entrevistas, conferencias, vistas administrativas y conversaciones que culminaron en la reducción de la deficiencia original de $369,576.67, a $161,276.96, o sea, una reducción que benefició a todos los demandantes en la suma de $208,299.71. La deficiencia final determinada para los años envueltos fue aceptada por los demandantes con excepción del año 1943, el que por acuerdo mutuo quedó sin liquidar debido a que el Tesorero se negó a admitir como deducibles en dicho año ciertas partidas (cuentas incobrables) reclamadas por los contribuyentes. Fue entonces que la Sucesión de don Marcial Suárez recurrió ante el anterior Tribunal de Contribuciones exponiendo las dos causas de acción a que ya hemos hecho referencia. En dicha acción comparecieron como querellantes todos los componentes de la Sucesión por sí y "por el administrador judicial Juan Suárez Fuentes". Como vere-

mos más adelante, los demandantes limitaron la controversia ante el tribunal sentenciador a la cuestión relacionada con la deducibilidad de las partidas reclamadas por ellos para el año 1943 y a la obligación del Tesorero, en caso de concederles esas deducciones, de acreditar el remanente de dichas pérdidas al computar el año 1944, a virtud de lo que disponía la sección 9 de la Ley de Contribuciones sobre Ingresos.

Es ahora ante nos, cuando ya el estatuto de prescripción ha atado las manos del Secretario de Hacienda para actuar, que los demandantes atacan con gran vehemencia la validez de la notificación de las deficiencias.

En materia contributiva, lo mismo que en otras relaciones jurídicas, no debe permitirse a una parte que esté a favor y en contra, según mejor convenga a sus intereses. *Alamo National Bank* v. *Commissioner of Internal Revenue*, 95 F.2d 622; *Phipps* v. *Commissioner of Internal Revenue*, 127 F.2d 214; *Pearson, Collector of Taxes* v. *Laughlin*, 190 F.2d 658; véase *Serra Garabís & Co.* v. *Municipio*, 42 D.P.R. 468; Mertens, *Fed. Law of Income Taxation*, Vol. 9, sec. 52.20, pág. 29. Los demandantes deben aceptar las consecuencias de su propio juego.

En la segunda causa de acción los demandados alegaron que el Tesorero le tasó a don Marcial Suárez una contribución para el año 1944, sin haberle sido notificado de antemano. Sostienen además, en las alegaciones de la demanda, que la renuncia hecha por ellos de la notificación de la tasación de la contribución para el 1944, antes de que ésta fuera impuesta, estaba condicionada a la resolución judicial que pudiera recaer sobre el año contributivo 1943. Suponiendo que el propósito de los demandantes fue atacar la deficiencia final para el año 1944 a base de falta de notificación de la tasación de dicha contribución, veamos cual fue la posición asumida por dichos demandantes en el tribunal a quo. Mientras declaraba el contador de los demandantes, Sr. Ángel de Ángel, explicando su intervención en las vistas administrativas, manifestó que se llegó a un acuerdo, aceptado por

:sus clientes, en cuanto a la contribución a pagar en los años 1941, 1942, 1945 y 1946. Cuando se le preguntó que por 'qué no llegaron a un acuerdo en cuanto a los años 1943 y 1944, contestó así:

"R. Para aliviar la situación del contribuyente y evitar recar-:gos por los intereses, se le dijo al Negociado que nos enviaran un 'Waiver', las renuncias de notificación. Las renuncias de notificación fueron remitidas para los años de 1941, 1942, 1945 y 1946. En cuanto al año 1943 no fue remitida ya que era 'el acuerdo no aceptar deudas incobrables que alegábamos noso-tros debían ser reflejadas en dicha declaración y descontadas del ingreso neto tributable del contribuyente e iríamos ante el Tribunal de Contribuciones. Asimismo en cuanto al año de 1944 al recibo del 'Waiver' anotamos en dicha renuncia que ésta sería la contribución a pagar, la acordada renuncia siem-pre y cuando el Tribunal de Contribuciones fallase en contra del .contribuyente." (T. E., págs. 14 y 15.)

Surgió entonces una discusión sobre el alcance del docu-mento titulado "Renuncia a las Restricciones para la Tasa-·ción y cobro de la Deficiencia en Contribución". Insistía el :abogado de los demandantes en que ellos no habían renun-·ciado la notificación de la tasación de la contribución para 'el año 1944. No era clara su posición ya que aparente-mente, según se desprende del debate entre las partes, había ·confusión en cuanto al punto envuelto. El testigo Ángel de .Ángel interrumpía con frecuencia al abogado y entonces el .Juez decretó un receso "para que se pongan de acuerdo y 'el letrado exponga en forma correcta y clara para el Tri-'bunal el punto específico". Después del receso los abogados 'de las partes se expresaron así:

·"Demandante:
"Señor Juez, con la venia del tribunal. Pensando y discu-tiendo el caso hemos llegado a la conclusión de que la materia principal es, que si el Tribunal de Contribuciones fallare que las cuentas son incobrables y aplicadas al año de 1943, el rema-nente de dichas pérdidas sería arrastrable al año de 1944, enton-ces el Negociado de Contribución sobre Ingresos haría el reajuste· de la contribución del año de 1944.

"Demandado:

"Tanto el año de 1943 como el año de 1944 están ante el tribunal y los vamos a considerar como prueba exclusivamente en relación con la parte sustantiva, en relación con la pérdida." (T. E., págs. 22 y 23.)

A partir de ese momento la controversia en el caso estuvo limitada a la procedencia de las deducciones por cuentas malas para el año 1943, y al reajuste del año 1944, arrastrándose a éste las pérdidas sobrantes del año 1943, si se resolvía que efectivamente el contribuyente sufrió esas pérdidas. De suerte que si los demandantes intentaron originalmente plantear ante el tribunal a quo la nulidad de las notificaciones de deficiencia y la imposición de la contribución para el año 1944, abandonaron durante el juicio esa teoría. No pueden suscitarla ahora en este recurso de revisión. *Sucn. Marrero* v. *Santiago*, 74 D.P.R. 816; *Latorre* v. *Cruz*, 67 D.P.R. 743, 752. Ello sería suficiente para desestimar los dos primeros errores. Puede agregarse sin embargo, y según correctamente arguye el Secretario de Hacienda, que el error en las notificaciones, de haberse cometido alguno, lo fue a invitación de los propios demandantes, primero, recurriendo ante el Tesorero para discutir las deficiencias a base de la notificación que ahora impugnan, y obteniendo como consecuencia de sus gestiones una rebaja sustancial en la contribución a pagar, y segundo, acudiendo al tribunal todos los miembros de la Sucesión por sí y por su administrador judicial para discutir, según se había convenido, el año 1943, con las consecuencias ya apuntadas en cuanto al año 1944, si prosperaba su reclamación en cuanto al año 1943. Finalmente diremos, en cuanto a estos dos primeros errores, que los demandantes no sufrieron perjuicio alguno por los alegados vicios o falta de notificación de las deficiencias, ni se les privó de la oportunidad de defenderse contra las determinaciones del entonces Tesorero de Puerto Rico. Véase, 9 Mertens, supra, sec. 50.11; *Commissioner of Inter-*

*nal Revenue* v. *Stewart*, 186 F.2d 239; *National Bank of Commerce et al, Trustees* v. *Commissioner of I. R.*, 34 B.T.A. 119; *Olsen* v. *Helvering*, 88 F.2d 650; *Haag* v. *Commissioner of Internal Revenue*, 59 F.2d 516; *Commissioner of Internal Revenue* v. *New York Trust Co.*, 54 F.2d 463. La cuestión del reajuste del año 1944, mediante la acreditación a dicho año, del remanente de las pérdidas sufridas en el 1943 resulta académica si resolvemos, como lo hizo el tribunal a quo, que don Marcial Suárez no sufrió tales pérdidas en el indicado año.

 Discutiremos los errores tercero y cuarto conjuntamente. Hemos visto que por el tercero se ataca la conclusión de hecho del tribunal sentenciador al efecto de que el contribuyente don Marcial Suárez había hecho gestiones con posterioridad al año 1943 para el cobro de las cuentas incobrables reclamadas como deducción, y por el cuarto sostienen que fue error concluir "que era necesaria la eliminación de las cuentas incobrables de los 'Libros' del Contribuyente".

Los demandantes reclaman la deducción de $100,164.34 [3] como cuentas incobrables para el año 1943, a virtud de lo

---

[3] Dicha suma se compone de las siguientes partidas:

"I.—Saldo a favor de Marcial Suárez Suárez en cuenta corriente entre éste y su hermano Herminio Suárez $41,622.79

"[Véase exhibit I de los demandantes, y B del demandado].

"Esta cuenta corriente fue desde junio 19 de 1917 hasta septiembre 30 de 1918. Contenía 10 partidas de 'debe' y dos de 'haber'. Se refería a anticipos de dinero hechos por Marcial Suárez Suárez a Herminio Suárez, quien falleció en octubre 9 de 1919.

"II.—Grupo de cinco pagarés, como sigue:

"Uno, del 31 de julio, 1922 pagadero el 31 de julio, 1923, por 7,500.00;

"Otro de igual fecha, pagadero el 31 de julio, 1924, por 7,500.00

"Ambos en un solo documento, fueron firmados por H. Suárez. Ver Exhibit III de los demandantes.

dispuesto en la sección 16(a)7 de la Ley de Contribuciones sobre Ingresos de 1925, preceptiva de que son deducibles al computar el ingreso neto de un contribuyente: "Débitos que se hayan juzgado incobrables y que hayan sido eliminados dentro del año contributivo (o, a discreción del Tesorero, una suma razonable como reserva para cuentas malas); y cuando se convenza de que una deuda puede ser cobrable solamente en parte, el Tesorero puede permitir la eliminación parcial de dicha deuda."

Interpretando la anterior sección de la ley dijimos en *Díaz* v. *Tribl. de Contribuciones*, 69 D.P.R. 845, que se permite la deducción de una deuda incobrable cuando se concluye definitivamente que es inútil tratar de cobrarla. Dijimos además que la justificación para una deducción de esta clase, lo mismo que para una deducción de una pérdida, "debe demostrarse o probarse por algún 'evento identificable', o por circunstancias concurrentes que sostengan una determinación de que carece de valor". En *Valdés* v. *Tribl. Contribuciones y Tesorero, Int.*, 71 D.P.R. 716, 721, ratificamos el principio de que la deducción por deuda incobrable es permitida cuando se concluye definitivamente que es inútil tratar

| | | |
|---|---:|---:|
| "Uno, del 25 de enero de 1921, pagadero el 31 de julio, 1921, por firmado por H. Suárez y Ceferino Fernández. | 5,000.00 | |
| "Otro del 25 de enero, 1921, pagadero el 31 de julio, 1922, por | 5,000.00 | |
| "Otro, del 25 de enero de 1921, pagadero el 31 de julio, 1923, por firmado por H. Suárez Jr. y Ceferino Fernández. | 5,000.00 | |
| "Otro (sin fecha), pagadero el 31 de julio, 1924, por firmado por H. Suárez Jr. y Ceferino Fernández. | 5,000.00 | 35,000.00 |
| "Véase el exhibit II de los demandantes y A del demandado. | | |
| "III.—Suma de cinco partidas adeudadas por la dicha Sucesión de Herminio Suárez Suárez, desde febrero 3 de 1923 hasta septiembre 27, 1924 | | 23,541.54 |
| Total | | $100,164.33" |

(Conclusiones del Tribunal, p. 29.)

de cobrarla. Anteriormente habíamos resuelto que el juicio que forme el contribuyente sobre si una deuda es incobrable, no es decisivo; que indudablemente en ausencia de otra prueba, la posición tomada por el contribuyente debe tener algún peso, pero el Tesorero no queda necesariamente obligado por ella; que el Tesorero debe resolver la cuestión en justicia, considerando todas las circunstancias que concurran y armonizando los intereses del contribuyente con los del tesoro público. *Soto Gras* v. *Domenech, Tesorero*, 45 D.P.R. 276 y *Mújica* v. *Sancho Bonet, Tes.*, 62 D.P.R. 5.

Arguyen los recurrentes que la conversación que tuvo don Marcial Suárez con don Herminio Suárez Padilla en el año 1943 en el restorán El Chévere, es el 'evento identificable' que llevó a don Marcial a concluir que sus créditos carecían de valor y que se habían perdido; (4) y argumentan en la siguiente forma:

"El Secretario no presentó prueba alguna para demostrar que esta determinación de Marcial Suárez, hecha en un restau-

---

(4) La prueba de esa conversación consistió en el testimonio de Veremundo Quiñones, quien declaró lo que sigue:

"P. ¿Don Veremundo, usted declaró que conoció a don Marcial Suárez hace más de 50 años y a don Herminio Suárez Padilla, también?

"R. Sí, señor.

"P. ¿Cuándo fue más o menos que usted vio por última vez a Herminio Padilla?

"R. Para el 1943.

"P. ¿Le trae a la mente algo esa relación?

"R. Me trae a la mente porque ese día estaba yo en casa.

"P. ¿Qué día era?

"R. Me parece que era martes pero no recuerdo la fecha, yo estaba en la tienda y el viejo que era muy buen amigo mío, llegó y me dijo, vamos a Santurce que me dicen que Herminio vino y vendió la finca de Santo Domingo y vamos a ver si él me da algún dinero. Nosotros fuimos a la Clínica Mimiya y no estaba y fuimos al Chévere, y cuando el viejo le dijo, tienes algo de lo que me debes . . . . .

"Demandado:

"P. ¿Qué personas eran?

"R. Don Marcial le hablaba a don Herminio Suárez Padilla.

"P. ¿Él vive o murió?

"R. Él está vivo.

rant de Santurce, no fuera cierta ni mucho menos de que no sirviera de base para que Marcial Suárez juzgara incobrables en ese momento y en ese año de 1943, la cuenta a que se refiere este litigio.

"La dificultad en este caso para los demandantes surge por el hecho de que fue necesario probar, como a nuestro juicio se probó, que Marcial Suárez, quien había fallecido a la fecha del pleito, había juzgado incobrables las cuentas. Si Marcial Suárez hubiera estado vivo a la fecha del litigio, fácil hubiera sido para éste probar otras circunstancias que lo llevaron a creer y a juzgar incobrables dichas cuentas. El juzgar una cuenta incobrable no se expresa con actos y hechos que puedan ser objeto de la preparación de un documento, o mostrarse en alguna forma con evidencia física, años después de la muerte de la persona que tomó esa determinación. ¿En qué otra forma hubieran podido los demandantes en este caso probar que Marcial Suárez juzgó incobrables en el año 1943, las cuentas objeto del litigio? Teniendo en mente esta dificultad de prueba y teniendo en mente además, el hecho de que el Secretario de Hacienda no presentó evidencia alguna para desvirtuar lo expresado por el testigo Veremundo Quiñones, en el sentido de que Marcial Suárez había juzgado incobrables dichas cuentas

"Demandante:
 "P. ¿Estaba usted delante?
 "R. Sí, yo estaba allí, yo andaba con don Marcial Suárez.
"Señor Juez:
 "P. ¿Usted dijo que quien se había presentado fue Herminio?
 "R. No, don Marcial Suárez, el viejo.
 "P. ¿Eso fue en el 1943?
 "R. Sí, señor.
"Demandante:
 "P. ¿En el Chévere a quien encontró fue a Herminio?
 "R. Sí, señor, a Herminio, y yo estaba con don Marcial.
 "P. ¿Quién estaba en el Chévere?
 "R. Herminio Suárez, y él le dijo mira que yo estoy sumamente mal y necesito dinero, y él le dijo, si usted está mal yo estoy mal también. Entonces le dijo que le debía más de cien mil dólares y no le dio ni un centavo.
 "P. ¿Entonces ustedes se fueron?
 "R. Sí, señor, nos fuimos.
 "P. ¿Eso fue en el 1943?
 "R. Si, señor, en el 1943.
 "P. ¿Usted está positivamente cierto?
 "R. Yo estoy seguro, yo nunca he dicho un embuste.
 (T. E., págs. 77 a 79.)

en cierto momento en que conversó con el deudor en un restau-
rant de Santurce, no podía el Tribunal concluir otra cosa que·
no fuera que había sido probado el hecho de que el contribuyente,.
o sea, Marcial Suárez, había juzgado incobrables las cuentas
que se discuten en este litigio. *Soto Rivera* v. *Secretario,* 78·
D.P.R. 177 (19 abril 1955) y *Vilanova* v. *Secretario,* 78 D.P.R.
807 (23 noviembre 1955).

"El hecho de que José Suárez hubiera hecho gestiones con
Herminio Suárez, con posterioridad al año 1943, para tratar de:
cobrar alguna parte de la deuda, no afecta en forma alguna el
hecho de que Marcial Suárez había juzgado en el año 1943,.
dichas cuentas como incobrables. Es el contribuyente quien
tiene que juzgar las mismas incobrables y no sus hijos u otros.
relacionados." (Alegato de los recurrentes, páginas 23 y 24.)

Hay varias fallas en los argumentos de los recurrentes..
La conversación sostenida por don Marcial Suárez con don
Herminio Suárez Miranda sólo prueba que en el año 1943;
don Marcial hizo una gestión infructuosa de cobro. De esa
conversación quizás don Marcial pudo haber juzgado que sus.
créditos eran incobrables pero necesariamente *no tuvo* que·
concluir que ello fuera así, según afirman los recurrentes..
Tampoco es correcto afirmar que el testigo Veremundo Qui-
ñones se expresara "en el sentido de que don Marcial Suárez
había juzgado incobrables dichas cuentas en cierto momento·
en que conversó con el deudor en un restaurant en San-
turce, . . . ." Lo que relata ese testigo, según hemos visto,
es que don Marcial le dijo a don Herminio que estaba suma-
mente mal y necesitaba dinero, contestándole éste que él tam-
bién estaba mal; que entonces, don Marcial le dijo que le·
debía más de cien mil dólares y don Herminio no le dio ni
un centavo.

Correspondía a los recurrentes probar que en ese mo-
mento, o que como consecuencia de esta conversación, don
Marcial juzgó que ya en el año 1943 sus créditos eran malos.
y que defintivamente era inútil tratar de cobrarlos.[5] No·

---

[5] Véase *San Miguel & Cía., Inc.* v. *Srio. de Hacienda,* 79 D.P.R..
345, 354–356.

se produjo tal prueba. Por el contrario, cuando don Marcial Suárez rindió su planilla para el año 1943 en marzo de 1944, no dedujo tales créditos como débitos incobrables. Más aún, después del año 1944, don Marcial Suárez tampoco hizo gestión alguna en las planillas de ingresos subsiguientes reclamando la deducción de esos créditos por ser incobrables. Por otro lado José Suárez Fuentes, hijo de don Marcial, hizo gestiones de cobro de esa deuda en múltiples ocasiones, la última de ellas en el año 1949 en que fue a Nueva York a reclamar a don Herminio el pago de la deuda. Es difícil creer que don Marcial estuviera ajeno a esas gestiones o que no se hicieran a sugestión o requerimiento suyo, especialmente si se considera que José, estando aun vivo don Marcial, llevó consigo los pagarés a Nueva York y los presentó a don Herminio para su cobro. Admiten los recurrentes que la dificultad en este caso surge por el hecho de que fue necesario probar y sostienen que lo probaron, que don Marcial Suárez, quien había fallecido para la fecha del pleito, había juzgado incobrables las cuentas y que de haber éste estado vivo para la fecha del litigio fácil le hubiera sido probar otras circunstancias que lo llevaron a creer y juzgar incobrables dichas cuentas. Sin embargo la imposibilidad de probar un hecho sustancial del cual depende el derecho del contribuyente, en nada le ayuda cuando él tiene el peso de la prueba. 9 Mertens *Law of Federal Income Taxation*, sec. 50.61, capítulo 50, pág. 127.

Las cuentas malas envueltas en este litigio no fueron eliminadas de los libros del contribuyente en el año 1943, ni en los años subsiguientes. Sostienen los demandantes que esas cuentas no figuraban en los libros de don Marcial Suárez y que por tanto era imposible su eliminación. El testigo Juan Suárez Fuentes, quien fue apoderado de don Marcial desde el año 1936 y tuvo siempre la custodia de los libros ya directa o indirectamente, según declaró, aseguró que en dichos libros no aparecía ningún pago o abono a esas cuentas.

No pudo sin embargo afirmar que en dichos libros no hubiere constancia de las obligaciones. Sin embargo, las partes estipularon que el contable Ángel de Ángel, testigo de los demandantes, declararía "que investigó los libros de contabilidad de la Sucesión Suárez y que de los referidos libros aparecen al descubierto las obligaciones que se relacionan en la demanda".

No se cometieron los errores tercero y cuarto. Tampoco el quinto. Por este último, sostienen los recurrentes que el tribunal a quo carecía de facultad para determinar una deficiencia por otras razones que no fueran las señaladas por el Secretario en su determinación de deficiencia. El argumento descansa en el hecho de que el inspector Velázquez Albó declaró que cuando practicó la investigación no dio crédito a unos documentos y a otros sí, y que como consecuencia consideró que no había probado la existencia y legitimidad de la deuda.

Aparte de que nada hay en el récord que indique que la opinión del inspector constituyó la determinación administrativa, lo cierto es que el entonces Tesorero rechazó la deducibilidad de los referidos créditos y que uno de los fundamentos que tuvo para ello fue que dichos créditos no eran deducibles en el año 1943. Así lo entendieron los recurrentes. En su demanda alegaron (1) la existencia de los créditos, y (2) que estos créditos habían sido juzgados incobrables para el año 1943. Ellos fracasaron, sin embargo, en probar que los susodichos créditos eran débitos incobrables para el año 1943 y que así lo había juzgado el contribuyente don Marcial Suárez.

*Por todo lo anteriormente expuesto, se confirmará la sentencia dictada por el Tribunal Superior en 13 de febrero de 1953.*

El Juez Asociado Sr. Santana Becerra no intervino.