Borinquen Home Corporation, demandante y recurrente *v.* Secretario de Hacienda de Puerto Rico, demandado y recurrido.

*Número:* 12462. *Resuelto:* 18 de diciembre de 1961.

*B. Sánchez Castaño* y *R. Rivero Cervera,* abogados de la recurrente; *Francisco Espinosa, Secretario de Justicia Interino, Arturo Estrella, Secretario Auxiliar* y *Stanley R. Segal, Procurador Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández como Presidente de Sala y los Jueces Asociados señores Blanco Lugo y Dávila.

PER CURIAM: Durante el año contributivo terminado en 30 de abril de 1949, la recurrente Borínquen Home Corporation efectuó ventas de casas y solares, tanto de contado como con pagos diferidos, por la suma de $3,078,533.52, cuyo costo ascendió a $2,470,532.18. Obtuvo pues un beneficio bruto de $608,001.34. La controversia en el presente litigio se limita a determinar si en relación con las ventas con pagos diferidos la contribuyente estaba obligada a incluir en su declaración de ingresos de dicho año el importe total del beneficio logrado. El Secretario de Hacienda incluyó en el ingreso de la corporación la suma de $288,247.36, que ésta había diferido para años siguientes.(1) Esta cantidad estaba representada por obligaciones suscritas por los compradores de los inmuebles, pagaderas en años subsiguientes, y generalmente garantizadas con hipoteca.

Las ventas con pagos diferidos adoptaron las siguientes formas:

*Ejemplo 1—Solar núm. 30 del bloque O de Caparra Heights*

En 2 de julio de 1947 Borinquen Home Corporation constituyó primera hipoteca a favor del Banco Crédito y Ahorro Ponceño sobre el solar núm. 30 del bloque O de Caparra Heights y la edificación que en el mismo se construiría por Long Construction Co. para garantizar la suma principal

---

(1) La recurrente determinó el beneficio que informó en su declaración, y sobre el cual pagó la correspondiente contribución de ingresos, en la siguiente forma:

| | |
|---|---:|
| Beneficio total en ventas de contado (Caparra Heights) | $189,167.85 |
| Beneficio total en ventas de contado (Bay View) | 4,734.01 |
| *Beneficio proporcional* en las ventas a plazos | 125,852.12 |
| Total: | $319,753.98 |
| Beneficio diferido (202 casos) para años siguientes | 288,247.36 |
| Total: | $608,001.34 |

de $7,800 y sus intereses a razón del cuatro por ciento anual, pagaderos en 240 plazos mensuales de $49.27. La suma principal fue pagada a la compañía constructora previa la presentación de certificaciones sobre obra ejecutada.

Una vez terminada la construcción de la casa y otras mejoras, Borinquen Home Corporation suscribió en 16 de diciembre de 1948 un compromiso de compra con Ramón F. López mediante el cual éste se obligó a adquirir el inmueble —solar y casa—por un precio total de $9,800, que sería satisfecho en la siguiente forma: El comprador López

| | |
|---|---:|
| a. asumiría el pago del balance de la primera hipoteca a que se ha hecho referencia, y que para la fecha indicada se encontraba reducida a | $7,562.09 |
| b. pago en efectivo, en el acto de la suma de | 200.00 |
| c. constituiría una segunda hipoteca, que sería asegurada por la Administración de Veteranos, por la suma de | 1,925.00 |
| d. satisfaría en el acto del otorgamiento de la escritura de traspaso, la cantidad de | 112.91 |
| | $9,800.00 |

Oportunamente el Banco Crédito y Ahorro Ponceño solicitó del Comisionado Federal de Viviendas la sustitución del deudor hipotecario, a lo cual se accedió. En 18 de abril de 1949 se otorgó el correspondiente consentimiento mediante el cual se liberó a Borinquen Home Corporation de toda responsabilidad bajo el préstamo indicado, convirtiéndose el comprador López en el único responsable del pago del mismo.

*Ejemplo 2—Solar núm. 9 del bloque K de Caparra Heights*

Este ejemplo es idéntico al anterior, con excepción de las cantidades envueltas y de que la segunda hipoteca constituida a favor de Borinquen Home Corporation no fue asegurada por la Administración de Veteranos.

*Ejemplo 3—*

Este ejemplo es idéntico al número 2, excepto que no medió la constitución de una segunda hipoteca y Borinquen Home Corporation aceptó obligaciones personales pagaderas a plazos.

La única cuestión que se plantea en este recurso es si el tribunal de instancia erró al determinar que las obligaciones recibidas por la corporación recurrente garantizadas con segunda hipoteca tenían valor en el mercado, y debe declararse, por tanto, el beneficio total determinado en estas ventas. La recurrente invoca la aplicación del artículo 84 del Reglamento Núm. 1 de la Ley de Contribución sobre Ingresos de 1924 (²) Se trata pues, por propia admisión de la apelante, de *ventas con pagos diferidos pero no a plazos*, a las que se refiere el artículo 82 (2) de dicho reglamento.

---

(²) Dicho artículo 84 lee como sigue:

"Artículo 84.—*Ventas de Bienes Inmuebles con Pagos Diferidos pero no a plazos.—*

"En la clase (2) del Artículo 82 las obligaciones asumidas por el comprador están mejor garantizadas debido al margen concedido por el sustancial primer pago, y la experiencia demuestra que la mayor parte de tales ventas son eventualmente cumplidas de acuerdo con sus términos. Si estas obligaciones tienen un valor razonable en el mercado, las mismas deben considerarse como el equivalente de dinero en efectivo y la propiedad obtenida de la transacción es ingreso tributable para el año en que el pago inicial se hizo y la obligación se asumió. Si el comprador no paga y el vendedor vuelve a obtener el título del terreno mediante convenio o procedimiento de ley y retiene los pagos anteriormente hechos, puede deducir de su ingreso bruto como pérdida en el año de reposesión cualquier exceso de la cantidad anteriormente informada como ingreso sobre la cantidad de hecho recibida, y debe incluir tales bienes inmuebles en su inventario al costo original para él (menos cualquier depreciación según ésta se define en los artículos 128 y 129). Si las obligaciones no tienen ningún valor razonable en el mercado, la cantidad del pago inicial será aplicada en contra y reducirá la base, según se dispone en el Artículo 7 y en los Artículos 32–44, de la propiedad vendida, y si excede de tal base, será tributable en cuanto al exceso. La ganancia o la pérdida se consuma cuando las obligaciones son satisfechas o se dispone de las mismas, calculándose sobre la diferencia entre la base, según se provee anteriormente, y la cantidad obtenida por ellas. Véanse los Artículos 32 y 125."

 La notificación a la contribuyente de que debía pagar la contribución sobre el beneficio total realizado en la venta constituía una determinación administrativa de que las obligaciones recibidas tenían un valor razonable en el mercado. *Borinquen Home Corporation* v. *Secretario de Hacienda*, 84 D.P.R. 132; *Spence* v. *Secretario de Hacienda*, 78 D.P.R. 406, 411 (1955). Esta determinación gozaba de la presunción de corrección que cobija las resoluciones administrativas de dicho funcionario y correspondía a la contribuyente rebatirla en forma satisfactoria. *Collazo* v. *Secretario de Hacienda*, 82 D.P.R. 650 (1961); *Carrión* v. *Tesorero de Puerto Rico*, 79 D.P.R. 371 (1956). Al efecto se ofreció prueba que consistió en el testimonio de Leonard D. Long, Presidente de la recurrente Borinquen Home Corporation. El Secretario presentó la declaración de Salvador Vivó Vilella, funcionario del Banco Gubernamental de Fomento Hemos examinado cuidadosamente la transcripción, y en verdad no puede concluirse que las obligaciones hipotecarias no tuvieran un *valor razonable* en el mercado, aunque este valor no coincidiera—apreciada la prueba en la forma más favorable a la recurrente—con el valor nominal o par de las mismas. Adviértase que, aunque se trataba de segundas hipotecas, en la mayoría de los casos estaban aseguradas por la Administración de Veteranos de Estados Unidos.

Ahora bien, es preciso advertir que la corporación contribuyente consideró en todo momento las ventas de inmuebles ventas a plazos cubiertas por los artículos 82 y 83 del reglamento citado. De ahí que en la demanda presentada hiciera referencia al hecho de que "en cada una de dichas ventas el pago inicial fue menor que [sic] la cuarta parte del precio de venta" (párr. 1) y que su declaración de ingresos fue preparada "a base de la proporción existente entre el beneficio bruto total a hacerse en cada venta y el precio bruto de venta según el contrato" y que "tal declaración está de acuerdo con las disposiciones de los artículos 82 y 83 del Reglamento de Contribución sobre Ingresos" (párr.

2). La posición que ahora asume en el presente recurso es. distinta a la que suscitó en las alegaciones. Cf. *Suárez* v. *Srio. Hacienda*, 82 D.P.R. 321 (1961). Respecto a este particular el tribunal de instancia determinó—y no se impugna en el presente recurso—que los referidos artículos no eran aplicables porque el pago inicial efectuado por los compradores equivalió al 80.35 por ciento del precio de venta convenido en el caso del ejemplo 1, y a 90.25 por ciento, en los otros dos ejemplos. Para ello consideró que el balance del primer crédito hipotecario cuyo pago se asumió por el comprador formaba parte del pago inicial, especialmente considerando que el acreedor hipotecario liberó de toda responsabilidad a la corporación vendedora en cuanto al pago de dicho crédito.(³)

Si se hubiera tratado de ventas de inmuebles con pagos diferidos pero no a plazos a que se refiere el artículo 84—único supuesto bajo el cual cobra importancia el hecho de si las obligaciones del comprador tienen o no un valor razonable en el mercado—y prevaleciera la posición de la contribuyente recurrente de que dichas obligaciones no tenían valor en el mercado, el método correcto para informar las transacciones era recobrar previamente el costo o base de la propiedad vendida, y no distribuir el beneficio proporcionalmente—aun en cuanto al pago inicial—como se hizo en el presente caso.

---

(³) Véase, *Internal Revenue Cumulative Bulletin*, núm. 5 (1921), pág. 91; Holmes, *Federal Income Tax* (1917); pág. 221. A partir de la vigencia de la Ley de Contribución sobre Ingresos de 1954, los créditos hipotecarios cuyo pago asume el comprador no se consideran parte del plazo inicial, excepto en cuanto exceden de la base o costo de la propiedad para él vendedor. Artículo 44.2(c) del Reglamento aprobado en 11 de julio de 1957; Paul y Mertens, *Law of Federal Income Taxation* (1934), vol. 1, pág. 622 y sec. 12.29, pág. 638.

En cuanto a la responsabilidad del deudor original en caso de ejecución de la finca hipotecada cuando ésta ha sido traspasada a un tercero y en la subasta no se obtiene una cantidad suficiente para cubrir el crédito hipotecario, véase, Muñoz Morales, *Lecciones de Derecho Hipotecario* (1946), tomo II, pág. 135 y ss.; *Carrera* v. *Palerm*, 52 D.P.R. 815 (1938); *López* v. *Sierra*, 49 D.P.R. 345 (1935); *Puig* v. *Sotomayor*, 47 D.P.R. 455 (1934); *Molina* v. *Pascual*, 42 D.P.R. 669 (1931).

██ El otro error planteado relacionado con el incidente sobre aprobación de cómputos ha sido resuelto adversamente a la apelante en *Borinquen Home Corporation* v. *Secretario de Hacienda,* supra. Véanse además, *Petrovich* v. *Secretario de Hacienda,* 79 D.P.R. 250 (1956) y *Piñán Vda. de Fajardo* v. *Secretario de Hacienda,* 83 D.P.R. 314 (1961).

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 9 de septiembre de 1954.*